**CORRECTED JANUARY 23, 2013 +**

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: ROBERT J. CAREY, | No. 11-60021 |
| Debtor, | BAP No. 10-1309 |
| ROBERT J. CAREY, | MEMORANDUM[*] |
| Appellant, | |
| v. | |
| CHARLIE Y. INC., | |
| Appellee. | |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kirscher, Hollowell, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted November 8, 2012
San Francisco, California

Before: FARRIS, FERNANDEZ, and BYBEE, Circuit Judges.

[*]       This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Appellant Robert J. Carey appeals from the Bankruptcy Appellate Panel's decision vacating the bankruptcy court's dismissal of appellee Charlie Y.'s fee motion and remanding for a determination of the appropriate amount of attorneys' fees. We dismiss the appeal for lack of jurisdiction because the BAP's decision was not sufficiently final.

This court has jurisdiction over appeals from "all final decisions, judgments, orders, and decrees" entered by the BAP. 28 U.S.C. § 158(d)(1). We have concluded that "final" for bankruptcy purposes under § 158(d)(1) may be interpreted more flexibly than "final" under 28 U.S.C. § 1291. *See Klestadt & Winters, LLP v. Cangelosi*, 672 F.3d 809, 813 (9th Cir. 2012). Thus, we generally apply the *Vylene* factors to determine finality,[1] which consider: "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm." *Lakeshore*, 81 F.3d

---

[1]Some of our decisions have suggested that *Connecticut National Bank v. Germain*, 503 U.S. 249, 253 (1992), may have undermined *Vylene* by implying that the standard for finality in § 158(d)(1) is the same standard as 28 U.S.C. § 1291. *See, e.g.*, *Bender*, 586 F.3d 1159, 1163 (9th Cir. 2009); *Lakeshore Vill. Resort, Ltd.*, 81 F.3d 103, 105–06 (9th Cir. 1996). Since we conclude that the BAP's decision was not final even under the more flexible *Vylene* test, we need not consider whether *Germain* undermines *Vylene*. *See Bender*, 586 F.3d at 1163–64; *Lakeshore*, 81 F.3d at 105–06.

103 at 106 (citing *In re Vylene Enters., Inc.*, 968 F.2d 887, 895–96 (9th Cir. 1992)). We lack jurisdiction under these factors.

First, a remand to the BAP to determine the appropriate amount of attorneys' fees is not "a purely mechanical or computational task," but rather is likely "to generate a new appeal or to affect the issue . . . on appeal." *Bender*, 586 F.3d at 1165 (internal quotation marks omitted). Calculating attorneys' fees will require the bankruptcy court to consider numerous legal issues, many of which Carey has already raised on remand. As a consequence, we may also need to "review the same issue[] in th[is] same case a second time." *Lakeshore*, 81 F.3d at 107. One of the main issues before this court is whether Charlie Y.'s+ "general claim" for attorneys' fees was pled properly. On remand, the bankruptcy court will also need to consider whether fees generated on appeal and from related state court litigation were also pled properly since this was not considered below. Indeed, the BAP suggested that the question of whether these additional fees were pled properly was an argument that could be "renewed on remand."

Second, declining to hear the case now will promote judicial efficiency. Given the possibility of piecemeal litigation, including the likelihood that similar issues would again be presented to this court, the most efficient course of conduct would be to consider whether *all* the fees were pled properly in a single decision.

Carey's argument that the litigation would end now if we were to reverse the BAP is unavailing. *See Walthall v. United States*, 131 F.3d 1289, 1293 (9th Cir. 1997).

Third, declining to hear the case now would not violate the bankruptcy court's role as primary finder of fact. Indeed, if we were to instead hear all the pleading issues now—including whether the fees from the related state court proceeding were properly pled—in order to avoid deciding the same issue twice, we would invade the bankruptcy court's role as finder of fact since it has not yet considered that question and thus has not had an opportunity to develop the record. *See Lakeshore*, 81 F.3d at 107; *In re Saxman*, 325 F.3d 1168, 1172 (9th Cir. 2003).

Finally, declining to hear the case will not cause irreparable harm. Carey argues he will suffer financial hardship if we dismiss because he will have to pay for costly litigation on an additional appeal. Given the possibility of piecemeal appeals, however, this may happen regardless. Moreover, litigation costs generally do not qualify as irreparable harm. *See F.T.C. v. Standard Oil Co.*, 449 U.S. 232, 244 (1980); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1099 (9th Cir. 2007).

In sum, the *Vylene* factors indicate that the BAP's decision lacks finality. Thus, we lack jurisdiction to hear the appeal. We express no view on the merits of the BAP's decision.

DISMISSED.