*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 12-FM-76, 12-FM-839, 12-FM-898, & 12-FM-1324

NATALIE KHAWAM, APPELLANT,

V.

GRAYSON P. WOLFE, APPELLEE.

Appeals from the Superior Court of the District of Columbia
(DRB-921-09 & DRB-1294-10)

(Hon. Fern Flanagan Saddler and Hon. John H. Bayly, Jr., Motions Judges)
(Hon. Neil E. Kravitz, Jr., Trial Judge)

(Argued April 2, 2013                         Decided February 6, 2014)

*Tillman Finley* and *Gregory F. Jacob*, with whom *Daniel Marino* was on the brief, for appellant.

*Sandra G. Wilkof* for appellee.

*Lori Alvino McGill* and *Kerry J. Dingle* filed a brief on behalf of the National Organization for Women Foundation, *et al.*, as *amici curiae* in support of appellant.

Before FISHER and MCLEESE, *Associate Judges*, and REID, *Senior Judge*.

MCLEESE, *Associate Judge*:  In these consolidated cases, the trial court granted the parties a decree of absolute divorce and decided a number of related issues, including the arrangements for child custody and visitation.  Appellant

Natalie Khawam raises several claims on appeal. First, she challenges the trial court's final order on custody and visitation, on the grounds that the court lacked jurisdiction and that, on the merits, the court committed several legal and procedural errors. Second, she contends that the trial court erroneously denied her motion to modify the custody order. Third, she argues that the divorce decree should be modified to impose the same reporting obligations on each party. Finally, she seeks reversal of the trial court's order awarding attorney's fees to her former husband, appellee Grayson Wolfe. We affirm the divorce decree and the initial custody and visitation orders, but we remand for further proceedings with respect to Ms. Khawam's motion to modify the custody order. We dismiss the appeal of the attorney's fees award for lack of a final order.

**I.**

Except as noted, the following facts are undisputed. Ms. Khawam and Mr. Wolfe met in September 2007 in the District of Columbia, where they both had lived for several years. They married in April 2008 on the grounds of Georgetown University in the District. Their son was born in October 2008, at Georgetown University Hospital in the District. Shortly after birth, the child was readmitted to Georgetown University Hospital for treatment of a staph infection.

In the months before their wedding, Ms. Khawam and Mr. Wolfe lived together in Ms. Khawam's apartment in the District. They continued to live in the District after the birth of their son, until they relocated to Arlington, Virginia, in January 2009. The parties dispute, and the trial court did not decide, whether the parties intended to relocate to Virginia permanently or instead only temporarily while searching for a permanent residence in the District.

After a bitter argument in early March 2009, Ms. Khawam left the marital home and went to Tampa, Florida, taking the child with her against Mr. Wolfe's express objections. Mr. Wolfe repeatedly demanded that Ms. Khawam disclose her precise location and return with the child, but Ms. Khawam refused. Several weeks after Ms. Khawam left for Florida, Mr. Wolfe filed a complaint here in the District seeking custody of the child. Aware of the pending lawsuit in the District, but not yet served with process, Ms. Khawam filed a petition for divorce and custody of the child in Florida state court.

In early April 2009, the Superior Court issued an order granting Mr. Wolfe temporary sole custody of the child. That order was served on Ms. Khawam in Tampa, as was notice of the pending custody case in the District. After receiving the notice, Ms. Khawam sought an ex parte temporary "stay-away" injunction

against Mr. Wolfe in Florida, alleging that Mr. Wolfe had committed acts of child abuse and domestic violence. A Florida state court granted the requested temporary injunction and subsequently issued additional temporary injunctions. In June 2010, however, the Florida state court determined that it lacked jurisdiction over Ms. Khawam's divorce petition and domestic-violence petitions and therefore dismissed the petitions and the corresponding temporary injunctions.

Ms. Khawam moved to dismiss Mr. Wolfe's custody case in the District, arguing that the Superior Court lacked jurisdiction and that the District was an inconvenient forum. After an eighteen-day evidentiary hearing, the trial court (Saddler, J.) denied the motion to dismiss.

In May 2010, Mr. Wolfe filed for divorce in the Superior Court. Ms. Khawam moved to dismiss, alleging improper service of process and lack of jurisdiction. The trial court (Bayly, J.) denied the motion to dismiss.

The custody and divorce cases were consolidated, but the trial court (Kravitz, J.) held separate, lengthy trials in each case. After the custody trial, the court granted sole custody of the child to Mr. Wolfe, but allowed Ms. Khawam supervised visitation with the child. After the divorce trial, the court issued a

judgment of absolute divorce ordering Ms. Khawam to pay child support to Mr. Wolfe and to report any new employment to Mr. Wolfe within forty-eight hours. The court denied without a hearing Ms. Khawam's motion to modify the custody order. Finally, the court issued an order partially granting Mr. Wolfe's request for attorney's fees. Ms. Khawam appeals from all four orders.

## II.

We first address Ms. Khawam's contention that the Superior Court lacked jurisdiction to issue the custody order. We conclude that the trial court correctly exercised jurisdiction.

In finding that it had jurisdiction to issue the custody order, the trial court relied upon D.C. Code § 16-4602.01 (a)(2) (2012 Repl.), which is part of the District of Columbia's Uniform Child Custody Jurisdiction and Enforcement Act ("DC UCCJEA"). *In re J.R.*, 33 A.3d 397, 400 (D.C. 2011). Under that provision, the District of Columbia has jurisdiction to enter an initial custody order if (1) the child at issue does not have a "home state" within the meaning of the DC UCCJEA, or the home state has deferred to the District; (2) the child and at least one of the child's parents have a "significant connection with the District other

than mere physical presence"; and (3) "[s]ubstantial evidence is available in the District concerning the child's care, protection, training, and personal relationships . . . ." D.C. Code § 16-4602.01 (a)(2). In determining whether these requirements are met, the trial court considers the situation at the time the initial custody application is filed. *Cf. In re B.B.R.*, 566 A.2d 1032, 1040 (D.C. 1989) (interpreting similarly worded provision of Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (c)(1)(b)(ii)(I) (1982)).[1]

Ms. Khawam does not dispute that the child in this case had no home state and that at least one of the child's parents had a significant connection with the District. Ms. Khawam does challenge the trial court's conclusions that the child

---

[1] The trial court applied the holding of *In re B.B.R.* to the DC UCCJEA, and both of the parties in this case endorse that ruling. We agree with the trial court and the parties that *In re B.B.R.*'s holding is equally applicable to the DC UCCJEA. We note, however, that in at least one case this court appears to have relied on factual developments after the filing of a custody application in reviewing a trial court's determination that the requirements of D.C. Code § 16-4602.01 (a)(2) had been met. *Carl v. Tirado*, 945 A.2d 1208, 1210 (D.C. 2008) (per curiam). The court in *Carl* did not discuss *In re B.B.R.* and did not explicitly address whether reliance on post-petition factual developments was legally permissible. *Id. Carl* therefore is not binding authority on the matter. *See generally, e.g.*, *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994) ("The rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question.") (internal quotation marks omitted).

had a significant connection with the District and that substantial evidence concerning the child was available in the District.

Generally, we review legal determinations concerning the trial court's jurisdiction de novo and we review factual determinations concerning the trial court's jurisdiction for clear error. *See, e.g.*, *Monteilh v. AFSCME, AFL-CIO*, 982 A.2d 301, 302 (D.C. 2009). This court does not appear to have decided whether "significant connection" and "substantial evidence" determinations under the UCCJEA are legal rulings to be reviewed de novo or instead should be reviewed deferentially. Courts in other jurisdictions take varying approaches to that question. *Compare, e.g.*, *Steven v. Nicole*, 308 P.3d 875, 879 (Alaska 2013) (using "abuse of discretion" standard in reviewing trial court's determination under Alaska UCCJEA that substantial evidence regarding child was available in state), *with, e.g.*, *In re Marriage of Sareen*, 62 Cal. Rptr. 3d 687, 691, 695 (Ct. App. 2007) (conducting de novo review of jurisdictional determination under California UCCJEA). For current purposes, we assume without deciding that we should review de novo the trial court's findings of "significant connection" and "substantial evidence" under D.C. Code § 16-4602.01 (a)(2).[2]

---

[2] With one exception, Ms. Khawam does not challenge on appeal any of the trial court's purely factual findings relating to jurisdiction. The exception involves

(continued . . .)

**A.**

In finding that the child had a significant connection to the District, the trial court relied on the following: (1) the child was born in the District; (2) the child lived in the District for the first two-and-a-half months of his life; (3) the child received medical treatment in the District; (4) both of the child's parents had significant connections with the District; and (5) Mr. Wolfe continued to live and work in the District. Considering that the child was only five months old when Mr. Wolfe filed the custody suit, we conclude that the child had a significant connection to the District.

Although we have not located a case that is on all fours with this case, this court and others have found a "significant connection" in circumstances comparable to those of this case. *See, e.g.*, *In re B.B.R.*, 566 A.2d at 1039-40 (under Parental Kidnapping Prevention Act, four-month-old child had significant connection with California, where child was born in California, child spent first two days of his life in California, parties signed adoption agreement concerning

_____

(. . . continued)

the trial court's finding that Mr. Wolfe began residing in the District of Columbia shortly before he filed the custody petition. The trial court did not commit clear error by making that finding based on the conflicting evidence before it.

child in California, and child's biological mother and sibling lived in California); *In re D.S.*, 840 N.E.2d 1216, 1223 (Ill. 2005) (newborn child had significant connection to Illinois, where child's father and half-siblings lived in Illinois and child's mother had lived in Illinois until at least morning of child's birth); *Shields v. Kimble*, 375 S.W.3d 738, 742 (Ark. Ct. App. 2010) (four-year-old child had "significant connection" to Arkansas, where child had lived in Arkansas for first three years of life, child had extended family living in Arkansas, and parental visitation occurred in Arkansas); *In re Marriage of Sareen*, 62 Cal. Rptr. 3d at 695 (two-year-old child had "significant connection" to California, where child had lived in California for three months, child had attended daycare in California, child's uncle lived in California, and child's mother was working part-time and receiving public assistance in California); *cf. Carl v. Tirado*, 945 A.2d 1208, 1210 (D.C. 2008) (infant had "significant connection" to District of Columbia, where father lived in District, child was baptized in District, child was cared for by father during day in District, extended family lived in District, and mother had brought suit for child support in District).[3]

---

[3] Ms. Khawam relies upon *In re Adoption of C.L.W.*, 467 So. 2d 1106, 1110 (Fla. Dist. Ct. App. 1985) (per curiam) (infant did not have "significant connection" with Pennsylvania, because infant's "only connection with Pennsylvania is the mere fact of her birth"). The infant in that case had been born in Pennsylvania and lived there for only three days before being removed to Florida. *Id.* at 1108, 1110. In contrast, the child in this case had resided in the

(continued . . .)

We are not persuaded by Ms. Khawam's arguments to the contrary. First, Ms. Khawam argues that the trial court could consider only connections that existed at the moment the custody suit was filed. According to Ms. Khawam, it therefore is irrelevant that the child had been born in the District and had resided in the District for the first two-and-a-half months of his life. We disagree. The provision at issue requires that the child "have a significant connection" to the District. D.C. Code § 16-4602.01 (a)(2)(A). Neither the wording nor the logic of that provision suggests that the trial court must ignore all circumstances that occurred before the filing of the custody petition. To the contrary, in determining whether a child or parent has a "significant connection" to a jurisdiction, this court and others have repeatedly considered events and circumstances that occurred before the filing of a custody petition. *See, e.g.*, *In re B.B.R.*, 566 A.2d at 1039 (considering facts that child had been born in California, child had remained in California for two days after birth, and parties had signed adoption agreement in California); *Shields*, 375 S.W.3d at 742 (considering fact that child had lived in Arkansas for first three years of life).

---

(. . . continued)

District for over two-and-a-half months. Moreover, the trial court in this case relied on a number of connections between the child and the District beyond the mere fact that the child had been born here. Finally, we note that this court has expressly rejected the reasoning of *In re Adoption of C.L.W.* *See In re B.B.R.*, 566 A.2d at 1039-40 n.23.

Second, Ms. Khawam argues that mere birth in a jurisdiction and ties between a parent and the jurisdiction do not suffice to establish a "significant connection" to the jurisdiction. Assuming without deciding that Ms. Khawam is correct, the trial court relied upon several other circumstances in finding that the child in this case had a "significant connection" to the District.

Third, Ms. Khawam points to various circumstances that she contends diminish the significance of the child's connections to the District, including that the child had travelled out of the District for a significant portion of the time that the child resided in the District, and that the family had voluntarily relocated to Virginia months before Mr. Wolfe filed the custody petition. Mr. Wolfe disputed Ms. Khawam's calculations about the number of days the child spent outside of the District and testified at trial that the relocation to Virginia was only temporary. The trial court did not resolve these disputes, but even accepting Ms. Khawam's version of events we see no basis for disturbing the trial court's determination that, all things considered, the child had a "significant connection" to the District.

**B.**

Ms. Khawam also challenges the trial court's ruling that substantial evidence concerning the child's care, protection, training, and personal relationships was available in the District. We uphold the trial court's ruling.

In finding that "substantial evidence" was available in the District, the trial court relied on the following: the child had been born in the District; the child had received medical treatment in the District; the child resided in the District for the first two-and-a-half months of his life; Mr. Wolfe continued to reside in the District; several of Mr. Wolfe's family members resided in the Washington D.C. metropolitan area; and the child had received pediatric care in nearby McLean, Virginia. In our view, this case is comparable to *Tirado* and *In re B.B.R.*, in which this court concluded that "substantial evidence" was available in the jurisdiction at issue. *See Tirado*, 945 A.2d at 1210 ("substantial evidence" available in District, where father lived in District, child was baptized in District, child was cared for by father during day in District, extended family lived in District, and mother had brought suit for child support in District); *In re B.B.R.*, 566 A.2d at 1038 & n.19 ("substantial evidence" available in California, where child was born in California, child spent first two days of life in California, parties signed adoption agreement

concerning child in California, and child's biological mother lived in California and was "most appropriate source of information about the future care, protection, training and future relationships the child would experience were he to be returned to her").

We are not convinced by Ms. Khawam's objections to the trial court's ruling. First, Ms. Khawam contends that the trial court erred by considering evidence that was physically located in Virginia rather than in the District. The provision at issue, however, states that substantial evidence must be "available in the District[,]" not that it must be physically present in the District. D. C. Code § 16-4602.01 (a)(2)(B). Neither party cites, and we have not located, a case addressing whether evidence must be physically present in the jurisdiction to be considered "available" for purposes of the UCCJEA. As a matter of both statutory context and ordinary language, though, it seems reasonable to consider evidence available in the District, even if it is not physically located in the District, as long as the evidence is geographically proximate and could readily be obtained for use in court proceedings here. *Cf. Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) ("the plain meaning of the term 'available' is 'capable of use for the accomplishment of a purpose,' 'immediately utilizable,' and 'accessible'") (quoting *Webster's Third New International Dictionary* 150 (1986)); Super. Ct.

Civ. R. 45 (b)(2) (2013) (permitting service of subpoenas outside of District, within twenty-five mile radius); Super. Ct. Dom. Rel. R. 45 (b)(2) (2013) (same). We thus uphold the trial court's decision in this case to consider evidence that was nearby and readily accessible, even if that evidence was not within the geographical boundaries of the District.[4]

Second, Ms. Khawam contends that the trial court should have disregarded Mr. Wolfe's decision to move back into the District before filing the custody petition, because Mr. Wolfe should not be permitted to manufacture jurisdiction under the DC UCCJEA. The trial court made no finding of improper "forum shopping," however, and at least in the absence of such a finding we see no error in the trial court's consideration of Mr. Wolfe's status as a resident of the District.

Third, Ms. Khawam argues that no witness from the District other than Mr. Wolfe actually testified at the custody hearing about the child's care, protection,

---

[4] The DC UCCJEA provides procedures by which courts in this jurisdiction may be able to obtain access to evidence located in other jurisdictions. D.C. Code § 16-4601.10, -.11 (2012 Repl.). In light of these procedures, evidence could arguably be viewed as "available in the District" even if the evidence was physically located in a far-off jurisdiction. Although we need not resolve the issue, we are skeptical that the DC UCCJEA could reasonably be read so expansively. In this case, the evidence is both quite proximate and readily available through the direct subpoena power of the Superior Court without need to resort to the special procedures available under the DC UCCJEA.

training, and personal relationships. The trial court was required to rule in advance of the custody hearing, however, about what evidence was *available*. This court must decide whether that preliminary ruling was correct, not whether substantial evidence was actually introduced at the subsequent custody hearing. As we have explained, "[i]t is important that a reviewing court evaluate the trial court's decision from its perspective when it had to rule and not indulge in review by hindsight." *Johnson v. United States*, 960 A.2d 281, 295 (D.C. 2008) (quoting *Old Chief v. United States*, 519 U.S. 172, 182 n.6 (1997)) (brackets in *Johnson*). For the reasons we have explained, the trial court did not err in finding that substantial evidence concerning the child's care, protection, training, and personal relationships was available in the District.

## III.

Ms. Khawam raises several challenges to the trial court's rulings in connection with Ms. Khawam's allegation that Mr. Wolfe had committed acts of domestic violence. Specifically, Ms. Khawam argues that Judge Saddler unfairly prevented Ms. Khawam from presenting evidence on that issue, that Judge Kravitz erroneously deferred to Judge Saddler's determination of that issue and demonstrated judicial bias, and that Judge Kravitz made several clearly erroneous

factual findings in concluding that Ms. Khawam had failed to demonstrate that Mr. Wolfe had committed acts of domestic violence. We affirm.

**A.**

After conducting a lengthy evidentiary hearing, Judge Saddler ruled that the District had jurisdiction over the custody matter and that the District was not an inconvenient forum. During that hearing, Ms. Khawam introduced evidence that Mr. Wolfe had engaged in acts of domestic violence. Mr. Wolfe denied having engaged in such acts and introduced other evidence in support of that denial. In concluding that the District was not an inconvenient forum, Judge Saddler discussed and ultimately discredited Ms. Khawam's allegations of domestic violence.

On appeal, Ms. Khawam contends that Judge Saddler denied her a fair opportunity to prove her claims of domestic violence, by substantially restricting Ms. Khawam's ability to introduce evidence on the issue and then resolving the issue on an incomplete record. We find no error. It is true, as Ms. Khawam emphasizes, that at various points during the hearing Judge Saddler excluded evidence about domestic violence. We do not agree with Ms. Khawam, however,

that Judge Saddler either flatly prohibited introduction of evidence of domestic violence or otherwise acted unfairly.

At several points during the hearing, Judge Saddler indicated her intent to bifurcate the hearing, first focusing on jurisdiction -- as to which Judge Saddler concluded that evidence of domestic violence was not relevant -- and then turning to the question whether the District was a convenient forum -- as to which Judge Saddler concluded that evidence of domestic violence would be relevant. *See, e.g.*, 12/08/09 Tr. 48-55, 89, 126; 12/09/09 Tr. 102, 125. Ms. Khawam does not challenge on appeal either the decision to bifurcate the hearing or the conclusion that evidence of domestic violence is not relevant to the issue of UCCJEA jurisdiction.[5]

Some of the other rulings cited by Ms. Khawam appear to be either (a) reiterations of the prior ruling that evidence of domestic violence was irrelevant to the question of jurisdiction or (b) rulings as to the admissibility of particular items

---

[5] Despite the discussion of bifurcation, the hearing was not in fact clearly separated into two separate parts, one devoted to jurisdiction and one devoted to whether the District was an inconvenient forum. It does not appear, however, that Ms. Khawam ever specifically objected on the ground that Judge Saddler was closing the hearing without affording Ms. Khawam the promised opportunity to introduce evidence of domestic violence.

of evidence of domestic violence, rather than a general ruling that evidence of domestic violence should be entirely excluded as irrelevant, even on the issue of whether the District was a convenient forum. *See, e.g.*, 1/27/10 Tr. 4; 1/27/10 Supp. Tr. 2-3; 2/23/10 Tr. 95, 120. Other than suggesting -- inaccurately -- that the trial court erroneously concluded that all of her evidence of domestic violence was irrelevant, Ms. Khawam does not specifically challenge on appeal the correctness of any of Judge Saddler's rulings as to the admissibility of particular items of evidence of domestic violence.

Finally, as already noted, it is undisputed that Judge Saddler admitted evidence of domestic violence at various points during the hearing. On this record, we conclude that Ms. Khawam has not established that Judge Saddler flatly precluded evidence of domestic violence or otherwise acted unfairly in her handling of such evidence during the hearing.[6]

---

[6] In passing, Ms. Khawam asserts that Judge Saddler imposed "unbalanced" and "arbitrary" time limits on Ms. Khawam during the hearing. This passing reference is not adequate to present an issue for our decision. *See, e.g.*, *Bardoff v. United States*, 628 A.2d 86, 90 n.8 (D.C. 1993) (treating claim as abandoned, where appellant mentioned claim but did not provide supporting argument). In any event, Judge Saddler's management of the lengthy hearing was in our view entirely reasonable.

In sum, we find no error in Judge Saddler's finding that Ms. Khawam had not shown that Mr. Wolfe had committed acts of domestic violence. We therefore affirm Judge Saddler's conclusion that the District would not be an inconvenient forum.[7]

**B.**

Ms. Khawam also contends that Judge Kravitz erred in his handling of the issue of domestic violence in connection with the custody and visitation determinations. We conclude to the contrary.

In arguing that she should be granted custody of the child, Ms. Khawam contended that Mr. Wolfe had threatened and physically abused both her and the child. *See* D.C. Code § 16-914 (a)(3)(F) (2012 Repl.) (trial court determining custody issue shall consider, among other things, "evidence of an intrafamily

---

[7] Judge Saddler ruled in the alternative that, even if there had been a showing of domestic violence, the Superior Court could adequately protect Ms. Khawam and the child from any harm. Ms. Khawam does not challenge that ruling, which provides ample support for Judge Saddler's decision not to dismiss the custody proceeding on the ground that the District was an inconvenient forum. *See* D.C. Code § 16-4602.07 (b)(1) (2012 Repl.) (in determining whether District is inconvenient forum, court shall consider, among other things, whether domestic violence has occurred and is likely to continue, and which jurisdiction could best protect parties and child).

offense" as defined in D.C. Code § 16-1001 (8) (2012 Repl.), which includes threats and assault against spouse or biological child). After conducting a lengthy evidentiary hearing, Judge Kravitz concluded that Ms. Khawam's allegations of domestic violence were "false." In support of that conclusion, Judge Kravitz relied upon seven considerations: (1) "Ms. Khawam made no contemporaneous or even near-contemporaneous reports of any of Mr. Wolfe's alleged criminal acts"; (2) Ms. Khawam's allegations expanded over time and were "so numerous, so extraordinary, and . . . so distorted that they defy any common sense view of reality"; (3) no physical, scientific, or documentary evidence supported Ms. Khawam's allegations; (4) only one witness testified before Judge Kravitz to having seen Mr. Wolfe assault Ms. Khawam, and Judge Kravitz did not credit the testimony of that witness, Ms. Khawam's twin sister, whom Judge Kravitz found to be "patently biased and unbelievable"; (5) Ms. Khawam's claim that Mr. Wolfe had forced her to engage in non-consensual sexual relations was undermined by "romantic and sexually suggestive emails Ms. Khawam sent to Mr. Wolfe shortly after the incident"; (6) "every judicial officer who has presided over an adversarial proceeding at which Ms. Khawam's allegations of domestic violence have been addressed has found the evidence supporting the allegations deficient"; and (7) "Ms. Khawam's allegations of child abuse by Mr. Wolfe have been found similarly wanting by every child welfare agency that has investigated them."

Ms. Khawam challenges Judge Kravitz's ruling on three grounds. First, Ms. Khawam contends that Judge Kravitz erred by deferring to Judge Saddler's procedurally flawed finding that Ms. Khawam had failed to prove domestic violence. As we have already explained, we are not persuaded by Ms. Khawam's challenges to the fairness of Judge Saddler's initial ruling. In any event, although Judge Kravitz did at one point rely on Judge Saddler's initial ruling in making the final custody and visitation ruling, Judge Kravitz also made clear that he was independently rejecting Ms. Khawam's claims of domestic violence.

Second, Ms. Khawam contends that Judge Kravitz showed judicial bias, by among other things prejudging the issue of domestic violence before hearing evidence on the issue. We see no basis for this contention. For example, it was entirely reasonable for Judge Kravitz, when considering requests for interim relief, to give weight to Judge Saddler's prior ruling on the issue of domestic violence. More generally, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). *Accord, e.g.*, *In re McMillan*, 940 A.2d 1027, 1039 (D.C. 2008). The rulings identified by Ms. Khawam do not raise even a remote concern about judicial bias.

Third, Ms. Khawam contends that Judge Kravitz's ruling rests on three clearly erroneous factual conclusions. Specifically, Ms. Khawam argues that (a) she did make contemporaneous reports of abuse, (b) no judicial officer ever actually made a finding about domestic violence based on a full evidentiary record, and (c) there was no evidence that any child-welfare agency ever investigated the allegations of child abuse and found the evidence lacking. We see no clear error.

Ms. Khawam cites various pieces of evidence in support of her claim that she made contemporaneous reports of domestic violence. Judge Kravitz, however, acted within his broad authority in finding this evidence either incredible or insufficient. *See generally, e.g.*, *In re Thompson*, 419 A.2d 993, 995-96 (D.C. 1980) (noting trial judge's discretion to discredit testimony). When the record is considered as a whole, Judge Kravitz permissibly found that Ms. Khawam did not demonstrate that she had made contemporaneous reports of Mr. Wolfe's alleged criminal acts of domestic violence. *Cf. generally Jordan v. Jordan*, 14 A.3d 1136, 1150-51 (D.C. 2011) (finding no clear error in trial court's determination that father had not committed certain acts of domestic violence).

Ms. Khawam next objects to Judge Kravitz's finding that "every judicial officer" who had addressed her domestic-violence allegations found the evidence

supporting the allegations deficient.  Specifically, Ms. Khawam argues that none of the judicial officers mentioned by Judge Kravitz actually resolved the allegations of domestic violence on a full evidentiary record.  We find no error.  In his order, Judge Kravitz very carefully and accurately described the prior rulings on the issue of domestic violence:  Judge Saddler held an evidentiary hearing on the issue; Judge Bayly adopted Judge Saddler's findings; and the court in Florida did not hold an evidentiary hearing but recognized, in Judge Kravitz's words, that Ms. Khawam's "allegations were infused with a strong motive to fabricate . . . ."

Finally, Ms. Khawam alleges clear error in Judge Kravitz's reference to the dismissal of the allegations of child abuse.  Specifically, Ms. Khawam claims that "no evidence was introduced showing that any child welfare agency had conducted an evidentiary investigation of the domestic violence allegations and found the evidence wanting."  Judge Kravitz's order, however, did not state that the agencies at issue had conducted an "evidentiary investigation," and it is not clear precisely what Ms. Khawam means by the term "evidentiary."  Nor is it clear whether Ms. Khawam contests the accuracy of Judge Kravitz's conclusions that the allegations of child abuse were closed as "unfounded" in the District or "without any finding of abuse" in Florida.  Even assuming that Judge Kravitz's order ran beyond the record on this point, that would not warrant reversal.  In finding that Ms. Khawam

had not proven her allegations of domestic violence, Judge Kravitz relied on seven separate considerations. We are confident that Judge Kravitz's ultimate ruling would not be affected by any error with respect to the precise bases upon which the allegations of child abuse were resolved. *See, e.g.*, *Prost v. Greene*, 652 A.2d 621, 629-30 (D.C. 1995) (affirming trial court's ultimate finding on each parent's ability to care for children despite several factual errors in court's analysis, because other evidence, unchallenged on appeal, provided "firm foundation . . . for the judge's ultimate determination").

In sum, we uphold the trial court's determinations that Ms. Khawam failed to demonstrate that Mr. Wolfe had committed acts of domestic violence.

**IV.**

Ms. Khawam argues that the custody order should be reversed because the trial court erroneously credited the testimony of Dr. Berman, the court-appointed custody evaluator, who testified that Ms. Khawam exhibited "poor logical thinking" and "a profoundly distorted view of Mr. Wolfe and of much of the world around her." Ms. Khawam contends that her expert, Dr. Prange, gave unrebutted testimony that Dr. Berman's psychological testing of Ms. Khawam was not

consistent with standard scientific protocols and that Dr. Berman's methods for conducting the custody evaluation fell short of professional standards. We find no grounds for reversal.

"[W]e will only reverse a trial court's order regarding child custody upon a finding of manifest abuse of discretion." *Hutchins v. Compton*, 917 A.2d 680, 683 (D.C. 2007) (internal quotation marks omitted). Our review of a trial court's consideration of expert testimony is similarly deferential. *See, e.g.*, *Varner v. District of Columbia*, 891 A.2d 260, 266 (D.C. 2006). The trial court in this case explained that its conclusions about Ms. Khawam's mental health were "without regard to" and "wholly independent of" the disputed testing results. Although Ms. Khawam argues that it is impossible to separate the trial court's conclusions regarding Ms. Khawam's mental health from Dr. Berman's testimony, the trial court based its conclusions about Ms. Khawam's mental health on substantial additional information, including Ms. Khawam's actions in keeping the child away from Mr. Wolfe in defiance of court orders, her fabrication of false allegations of domestic violence, her troubled personal life before her involvement with Mr. Wolfe, her difficulty in keeping steady employment, and the trial court's own observations of and interactions with Ms. Khawam. We see no reason to doubt the trial court's explicit disavowal of reliance upon Dr. Berman's disputed testing

results. *Cf., e.g.*, *O'Boskey v. First Fed. Sav. & Loan Ass'n of Boise*, 739 P.2d 301, 307 (Idaho 1987) (rejecting argument that trial court "based its decision on grounds it said it did not consider").

## V.

Ms. Khawam contends that the custody order should be reversed because the trial court's visitation order was "harsh" and afforded Ms. Khawam "extremely limited" visitation. More specifically, Ms. Khawam objects to the following restrictions: (1) visitation is limited to thirteen hours per week; (2) visitation must be supervised; (3) visitation must occur on Monday afternoon, Friday afternoon, and Saturday during the day; and (4) Ms. Khawam cannot take the child more than ten miles outside the District.

In determining parental visitation rights, the trial court must "foster and safeguard [the] child's best interests." *Hamel v. Hamel*, 489 A.2d 471, 475 (D.C. 1985) (internal quotation marks omitted; brackets in *Hamel*). Under D.C. Code § 16-914 (a)(3), the trial court must consider seventeen factors in determining the best interest of the child, including the interaction of the child with each parent, the mental health of the parents, the capacity of the parents to communicate, and the

parents' willingness to share custody. This court will reverse a trial court's ruling on the subject of visitation "only for a clear abuse of discretion." *Maybin v. Stewart*, 885 A.2d 284, 287 (D.C. 2005). We find no clear abuse of discretion in the original visitation ruling.

In this case, after thoroughly considering each of the statutory factors and several additional factors (including Ms. Khawam's lack of honesty and integrity and her failure to obey court orders), the trial court concluded that it was in the child's best interest for Mr. Wolfe to be the child's sole legal and primary physical custodian. The trial court also carefully explained its reasons for determining that, at least initially, Ms. Khawam should be permitted limited visitation under careful supervision. Specifically, the trial court expressed concern that Ms. Khawam might "attempt to remove the child once again, escalate her negative comments about Mr. Wolfe, or act in ways otherwise detrimental to the child's best interest." We are satisfied that the trial court did not abuse its discretion by initially limiting Ms. Khawam's visitation to thirteen hours per week and requiring that visitation be supervised. *Cf., e.g.*, *Maybin*, 885 A.2d at 287-88 (concluding that trial court did not abuse its discretion by requiring father to attend counseling with child as condition of resuming visitation, because trial court, after hearing evidence from all parties, was "merely considering [child's] best interests, as it was obliged to

do"); *Galbis v. Nadal*, 626 A.2d 26, 28-29 (D.C. 1993) (affirming trial court's requirement that child's overnight stays with father be supervised by particular caretaker, where trial court "provided a rational basis" for requirement); *Hamel*, 489 A.2d at 475 (affirming trial court's suspension of mother's visitation until mother met with psychiatrist and psychiatrist proposed visitation schedule, noting that when "a parent's mental condition is properly at issue in determining visitation rights, it is entirely appropriate for the trial court to solicit professional opinion").

Ms. Khawam argues, however, that the initial visitation order made it impossible for her to work and placed an enormous financial burden on her to travel from Tampa, where she currently lives, to the District. As the trial court noted in the custody order, however, Ms. Khawam's counsel had indicated to the trial court that Ms. Khawam would move to the District if the trial court awarded primary physical custody to Mr. Wolfe. The trial court properly relied upon counsel's statement in crafting the original visitation order. *Cf., e.g.*, *Flax v. Schertler*, 935 A.2d 1091, 1103 (D.C. 2007) ("it is necessary for the orderly conduct of litigation that the trial court be able to rely on counsel's representations at important junctures of litigation") (internal quotation marks omitted). As to the specific dates and times of visitation, the trial court explained in the initial custody order that the schedule was a temporary arrangement to accommodate the

possibility that Ms. Khawam would not be able to move from Tampa to the District immediately. We do not find the specific visitation schedule in the initial custody order, intended to be temporary, to be a clear abuse of discretion.

## VI.

Ms. Khawam also appeals from the trial court's order denying her motion to modify the custody order. Ms. Khawam argues that the trial court erred by denying her motion "summarily" and without any opportunity for an evidentiary hearing. We agree with Ms. Khawam on this point.

In its initial custody order, the trial court stated that Ms. Khawam could file a motion asking the court to vacate the requirement that her visits with the child be supervised. The trial court required that any such motion be supported by a written report of a licensed psychologist who had conducted a full psychological evaluation of Ms. Khawam. The trial court further noted that if it granted such a motion, it would also enter a new visitation schedule in the child's best interest based on "the circumstances presented at the time."

Ms. Khawam accordingly filed a motion to modify the custody order, attaching the required psychologist's report; the detailed notes of the court-assigned visitation supervisor; a letter from a psychiatrist who had examined Ms. Khawam; an affidavit from a physician who had treated an injury sustained by the child that the child allegedly stated had been caused by Mr. Wolfe; and other medical records concerning the child's health. Based on these attachments, Ms. Khawam asked the trial court to remove the supervision restrictions; to grant Ms. Khawam more extensive visitation; to order a professional evaluation to determine the child's medical and psychological needs; to forbid Mr. Wolfe from engaging in any corporal punishment of the child; and to forbid Mr. Wolfe and his family from making any derogatory remarks about Ms. Khawam in the child's presence. The trial court denied Ms. Khawam's request in a summary order, explaining its determination as follows:

> Nothing in Ms. Khawam's motion or its attachments has allayed the concerns that led the court to impose the supervision requirement as part of the [initial custody order], and the court does not believe that increasing the length or frequency of Ms. Khawam's visits with the child would be in the child's best interest at this time. This three-year-old boy has experienced extraordinary upheaval in his brief life, and he needs a chance to settle in to his new surroundings and routine with Mr. Wolfe here in the District of Columbia. It is not surprising, given all that has transpired, that the child might act up during transitions or visits with his mother.

We conclude that the trial court abused its discretion by summarily denying Ms. Khawam's motion to modify. The trial court restricted Ms. Khawam's visitation rights in part based upon concerns about Ms. Khawam's mental health. In connection with her motion to modify the custody order, Ms. Khawam submitted a favorable psychologist's report. Although the trial court was not compelled to accept the psychologist's conclusions, the trial court did not specifically address the psychologist's report. Moreover, Ms. Khawam raised many serious allegations in her motion to modify, including that the child was afraid of Mr. Wolfe; that Mr. Wolfe had struck the child in the face, causing injury requiring medical treatment; that the child was acting out to an extreme degree (for example, by striking his mother in the face and using profanity); and that the child's physical health was deteriorating. These allegations were all based on interactions with the child after the initial custody order, and they were supported by medical records, a treating physician's affidavit, and the detailed notes of the court-appointed visitation supervisor. The trial court's order makes no mention of these serious allegations.

Under the circumstances, we conclude that the trial court was required either to conduct an evidentiary hearing or to explain with specificity why such a hearing was not required, despite the serious allegations raised by Ms. Khawam's motion

to modify. *See* Super. Ct. Dom. Rel. R. 52 (a) (2013) (trial court shall set forth findings of fact and conclusion of law when ruling on motion to modify prior order); *Sampson v. Johnson*, 846 A.2d 278, 284 (D.C. 2004) (vacating order denying motion to modify custody and visitation, because trial court "did not reveal [its] reasoning with respect to the thorny visitation issue"); *López v. Ysla*, 733 A.2d 330, 334 (D.C. 1999) (trial court abused discretion by denying motion to reconsider child support without addressing alleged proof presented by movant); *cf. generally Griese v. Kamp*, 666 N.W.2d 404, 408-09 (Minn. Ct. App. 2003) (reversing trial court's denial without hearing of motion to modify custody; "evidentiary hearings are strongly encouraged where allegations are made of present endangerment to a child's health or emotional well being") (internal quotation marks omitted).[8]

## VII.

In the divorce judgment, Judge Kravitz required Ms. Khawam to report changes of employment status to Mr. Wolfe, but did not impose a reciprocal requirement on Mr. Wolfe. Ms. Khawam subsequently moved to amend that

---

[8] Since the trial court denied Ms. Khawam's initial motion to modify, Ms. Khawam has filed two additional motions to modify. The first motion was withdrawn, but the second is currently pending.

aspect of the judgment, arguing that Mr. Wolfe should be subject to a reciprocal reporting requirement. Judge Kravitz denied the motion, explaining that he had imposed a reporting requirement on Ms. Khawam in light of Ms. Khawam's unstable employment situation, because changes in Ms. Khawam's employment could abruptly and significantly alter her child-support obligations. In contrast, Judge Kravitz further explained, Mr. Wolfe had a steady source of income. Child-support orders are subject to reversal only for clear abuse of discretion. *Wilson v. Craig*, 987 A.2d 1160, 1164 (D.C. 2010). We are satisfied by Judge Kravitz's explanation for the decision to impose the reporting requirement on Ms. Khawam but not Mr. Wolfe, and we therefore find no abuse of discretion.

## VIII.

Finally, Ms. Khawam seeks reversal of the trial court's order awarding attorney's fees to Mr. Wolfe. We dismiss Ms. Khawam's appeal from this order for lack of a final order, and we therefore do not address the merits of the trial court's fee award.

Mr. Wolfe sought an award of over $700,000 in attorney's fees and costs incurred during the custody and divorce litigation. Mr. Wolfe relied on three

separate legal theories: the common law "necessaries" doctrine, which permits an award of attorney's fees in a child-custody case if the court finds that "counsel was necessary to protect the interests of the [child]," *Kenda v. Pleskovic*, 39 A.3d 1249, 1257 (D.C. 2012) (internal quotation marks omitted); the "bad faith" exception, which permits a fee award "against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons connected to the litigation," *Cave v. Scheulov*, 64 A.3d 190, 193 n.9 (D.C. 2013) (internal quotation marks omitted); and a provision authorizing payment of "suit money," including attorney's fees, in divorce proceedings, D.C. Code § 16-911 (a)(1) (2012 Repl.). The trial court awarded Mr. Wolfe $350,000 under the necessaries doctrine, but expressly declined to decide whether Mr. Wolfe was entitled to an award under the remaining two theories. The trial court instead provided that "Mr. Wolfe may renew his request for fees and costs under the bad faith exception and the suit money provision . . . in the event the award entered in this order has been disturbed on appeal or Mr. Wolfe wishes to argue that an award under either or both of the alternative grounds should be larger than the award entered herein."[9]

---

[9] The trial court's decision to award fees only under the necessaries doctrine may have been influenced by complications that arose after Ms. Khawam filed for bankruptcy. The parties disagreed as to whether the bankruptcy proceedings foreclosed a fee award under the bad-faith exception, but agreed that the bankruptcy proceedings did not foreclose a fee award under the other two theories. We note that the bankruptcy proceedings have apparently now been completed and

(continued . . .)

On appeal, Ms. Khawam challenges the fee award on the merits, but also argues that the trial court acted impermissibly by ruling as to only one of the theories upon which Mr. Wolfe sought a fee award. Although Ms. Khawam does not frame the latter argument in jurisdictional terms, an issue of finality is raised by the trial court's decision to address only one of the three grounds upon which Mr. Wolfe sought attorney's fees. We must address that jurisdictional issue even though the parties did not squarely raise the issue. *See, e.g.*, *United States v. Stephenson*, 891 A.2d 1076, 1078 (D.C. 2006) (sua sponte considering whether order was final and appealable).

This court's jurisdiction is generally limited to appeals from final orders and judgments of the trial court. D.C. Code § 11-721 (a)(1) (2012 Repl.); *see also McDiarmid v. McDiarmid*, 594 A.2d 79, 81-82 (D.C. 1991). "The requirement of finality serves the important policy goals of preventing the unnecessary delays resultant from piecemeal appeals and refraining from deciding issues which may

_____

(. . . continued)

thus should not pose any obstacle to a final determination on remand of Mr. Wolfe's fee request. We further note that Mr. Wolfe has not yet sought an increased fee award under the theories that the trial court did not resolve. At oral argument, counsel for Mr. Wolfe left open the possibility that Mr. Wolfe might in the future seek an increased fee award under those theories. We express no opinion on the implications, if any, of Mr. Wolfe's failure to seek an increased fee award more expeditiously.

eventually be mooted by the final judgment." *Rolinski v. Lewis*, 828 A.2d 739, 745 (D.C. 2003) (internal quotation marks and alterations omitted).

For an order to be final, "it must dispose of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered." *McDiarmid*, 594 A.2d at 81 (internal quotation marks and brackets omitted). The order "must not only be final but also complete, that is, final not only as to all parties, but as to the whole subject matter and all the causes of action involved." *Id.* (internal quotation marks omitted). An order awarding attorney's fees but not determining the amount of the fees is not final. *Linen v. Lanford*, 945 A.2d 1173, 1182 (D.C. 2008).

The order awarding attorney's fees in this case does not have the typical attributes of a final order. First, the order did not definitively determine the amount of fees to which Mr. Wolfe is entitled. Mr. Wolfe sought fees under three potentially overlapping but distinct theories. A fee award for "suit money" would focus on Mr. Wolfe's need for representation in the divorce proceedings, D.C. Code § 16-911 (a)(1); a fee award under the necessaries doctrine would focus on the need for representation in the custody proceedings to protect the best interest of the child, *Kenda*, 39 A.3d at 1257; and a fee award under the bad-faith exception

would focus on those legal expenses arising from any bad-faith litigation engaged in by Ms. Khawam, *Breezevale Ltd. v. Dickinson*, 879 A.2d 957, 968-69 (D.C. 2005). Thus, as the trial court explicitly acknowledged, the award under the necessaries doctrine left open the possibility that Mr. Wolfe might recover an additional award under the theories that the trial court declined to resolve. Second, for this court to review the current fee award would run afoul of both policies underlying the finality rule. There would be a very real risk of piecemeal review, because any ruling on the merits of the fee award in this appeal would leave open the possibility of further litigation concerning the unresolved alternative theories. *Cf. In re Orshansky*, 952 A.2d 199, 207-09 (D.C. 2008) (addressing finality of interim compensation orders in probate proceedings; "Orders granting attorney's fees are interlocutory until both the underlying action and the adjudication of fees are complete (except for the possibility of fees generated by the act of appealing that final order); otherwise this court would have to review fee awards that are still subject to change."). Moreover, the trial court's decision to address only the "necessaries" doctrine would require this court to address the difficult issues raised by the application of that doctrine in this appeal, even though it is possible that those issues would not have required resolution if, for example, the trial court had determined that Mr. Wolfe was entitled to an award of the same fees under the bad-faith exception.

We have found no case in this or any other court treating a comparable order as final and appealable. To the contrary, a number of courts have dismissed appeals for lack of finality in comparable circumstances. *See, e.g.*, *Austin v. Austin*, 102 So. 3d 403, 404-08 (Ala. Civ. App. 2012) (dismissing appeal for lack of finality, where court granted fee award as to work done with respect to consolidated actions, but retained jurisdiction over one of actions and reserved right to award additional fees with respect to that action; "In entering the judgment awarding attorney's fees, the trial court clearly contemplated awarding additional attorney's fees in this action. The propriety of those awards, or the lack thereof, is likely to be the subject of an additional appeal."); *Ramco Indus. v. C & E Corp.*, 773 N.E.2d 284, 287-89 (Ind. Ct. App. 2002) (dismissing as non-final interim order granting attorney's fees as to one count but leaving open future fee award as to other count); *In re Carey*, 500 F. App'x. 595, 596-97 (9th Cir. 2012) (unpublished) (dismissing appeal for lack of finality, where bankruptcy appellate panel had remanded case to bankruptcy court for determination of an appropriate amount of attorney's fees; "Calculating attorneys' fees will require the bankruptcy court to consider numerous legal issues, many of which [appellant] has already raised on remand. As a consequence, we may also need to review the same issue in this same case a second time. . . . [T]he most efficient course of conduct would be to consider whether *all* the fees were pled properly in a single decision.")

(internal quotation marks and brackets omitted); *cf. Pigford v. Venemen*, 361 U.S. App. D.C. 345, 347, 369 F.3d 545, 547 (2004) (post-judgment interim fee award was non-final and non-appealable, because award did not "dispositively determine fees due" and district court "clearly contemplates revising the fee award at a later time") (internal quotation marks and brackets omitted); *Rum Creek Coal Sales v. Caperton*, 971 F.2d 1148, 1155 (4th Cir. 1992) (order denying attorney's-fee request was non-final, where trial court denied request "at this time" pending further information from parties and resolution of several issues on appeal); *Baskin v. Hawley*, 810 F.2d 370, 371-72 (2d Cir. 1987) (per curiam) (where underlying order on merits had been vacated on appeal and remanded for further proceedings, court dismissed appeal challenging fee award; "There is a strong federal policy against the taking of piecemeal appeals. This policy is reflected, for example, in the rule that an interim award of attorney's fees to a plaintiff as a prevailing party on some claims, where other claims remain pending, is not immediately appealable.").

It is essential to our ruling that the alternative theories left unresolved by the trial court might entitle Mr. Wolfe to recover fees in addition to the fees awarded by the trial court under the necessaries doctrine. When a litigant seeks precisely the same relief on several alternative grounds, the trial court may appropriately

grant that relief on only one of those grounds, without resolving the validity of the others, and such an order would not lack finality. *See, e.g.*, *City of Riverside v. State*, 944 N.E.2d 281, 288-89 (Ohio Ct. App. 2010) (grant of "complete" relief on theory "rendered moot" other theories requesting same relief). But where the trial court resolves only one claimed basis for relief, and leaves open other claims for additional relief, the trial court's order will generally lack finality. *See, e.g.*, *Merrell Dow Pharm. v. Oxendine*, 593 A.2d 1023, 1026 (D.C. 1991) ("because the judgment leaves plaintiff th[e] option of seeking additional damages, it cannot be viewed as final") (internal quotation marks and brackets omitted); *Jones v. Jones*, 869 So. 2d 1120, 1123 (Ala. 2003) ("An order is not final if it permits a party to return to court and prove more damages or if it leaves open the question of additional recovery.").[10]

## IX.

In sum, we affirm the custody order, the initial visitation order, and the judgment of divorce; we vacate and remand the trial court's order denying Ms.

---

[10] This case does not involve, and we therefore do not address, the finality of fee awards that determine the amount of fees to be awarded for a discrete portion of the proceedings. *Cf. In re Orshansky*, 952 A.2d at 207-09 (addressing finality of orders granting interim compensation in probate proceedings).

Khawam's motion to modify the custody order; and we dismiss the appeal from the award of attorney's fees for lack of a final order.[11]

*So ordered.*

---

[11] The lack of finality in the order awarding attorney's fees does not undermine the finality of the custody order and the divorce decree. *See, e.g.*, *Dyer v. William S. Bergman & Assocs., Inc.*, 635 A.2d 1285, 1288 & n.6 (D.C. 1993) ("As a general matter . . . a claim for attorney's fees is not part of the merits of the action to which the fees pertain . . . so that an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final.") (internal quotation marks omitted); *accord Ray Haluch Gravel Co. v. Central Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, No. 12-992, 2014 WL 127952, at *5-9 (U.S. Jan. 15, 2014).