Wendy DUMAS, Appellant

v.

Isaiah WOODS, Jr., Appellee.

No. 05–FM–1270.

District of Columbia Court of Appeals.

Submitted Dec. 12, 2006.
Decided Jan. 11, 2007.

Wendy Dumas, pro se.

Before FISHER and THOMPSON, Associate Judges, and FERREN, Senior Judge.

THOMPSON, Associate Judge:

Appellant Wendy Dumas appeals from a Superior Court order granting legal and physical custody of her son J.D. solely to the child's father, appellee Woods, and ef-

fectively denying the parties' request for joint legal custody. We find that the trial court's brief written order contains insufficient analysis to permit us to assess whether the court considered all of the relevant factors and whether it correctly applied the statutory presumption favoring joint custody, which applies with particular force when the parents have agreed to joint custody. Accordingly, we vacate the custody order and remand the case to the trial court to articulate findings of fact and conclusions of law (that reflect the situation as it exists following the remand) and to fashion an order that is consistent with the requirements of D.C.Code § 16–914.

## I.

On November 29, 2004, appellee Woods, who is J.D.'s biological father, filed a petition to obtain joint legal and physical custody of J.D. On December 1, 2004, appellant Dumas, who had custody at that time, filed her contested answer and counterclaim for custody. The case was set for a hearing but the hearing was continued pending the parties' attempt at mediation. On July 11, 2005, the court ordered a home survey of both parties' residences.

On September 19, 2005, the court held a custody hearing. Both parties proceeded *pro se.* The parties informed the court that J.D., who was thirteen years old at the time of the hearing, had lived with appellant all of his life and was having behavioral problems. Woods asserted that Dumas was unable to control J.D., that J.D. disrespected her, and that he (Woods) wanted to "take control of" and have more input into J.D.'s life, and wanted to be able to mold him. Dumas acknowledged that the schools near Woods' home might be better for J.D. than the schools near Dumas's home. The following colloquy occurred at the hearing:

The Court: ... we could do joint, legal custody and let him—and physical custody with [Mr. Woods], and therefore—and a visitation, a reasonable visitation with Ms. Dumas.

Mr. Woods: That would be more than acceptable.

The Court: And then, therefore, any, you know, she—you won't be—you can see him; you still have, under legal concept—you see, it's basically joint custody. It's just [J.D. is] living with his father.

Ms. Dumas: Okay.

The trial judge informed the parties that he would review the home survey, which he had received but not read, and would "make a decision based on that." The docket entry documenting the September 19, 2005 hearing states, "HEARING HELD JOINT CUSTODY AWARDED TO PARTIES, WITH PSYICAL [sic] CUSTODY AWARDED TO PLAINTIFF," *i.e.,* that joint custody was awarded to the parties with physical custody awarded to Woods.

After completing the home survey that the court had ordered, the Superior Court Social Services Division Domestic Relations Officer recommended, in a report dated September 16, 2005, that joint legal custody of J.D. be granted to Dumas and Woods and that primary physical custody remain with Dumas.

On the day following the September 19 hearing, the court issued a one-page "Permanent Order of Custody of Minor Child," concluding that:

"[b]ased upon the pleadings, the Home Survey, the representations of the parties made in open court, and the consent of [Dumas], the court concludes that it is in the best interest of the minor child to be in the custody and care of [Woods] and that [Woods] is a fit and proper

person to have legal and physical custody of the minor child, with liberal visitation rights reserved to [Dumas]."

The court made no other findings of fact or conclusions of law and did not discuss the contents of the home survey report.

Still proceeding *pro se,* Dumas filed a motion to reconsider on September 23, 2005, arguing that the court should have awarded the parties joint legal custody of J.D. as agreed during the custody hearing. In its September 28, 2005 order denying the motion to reconsider, the court stated that it had issued the custody order after having "carefully considered all the issues set forth in the home survey, the testimony of the parties, the wishes of the parties, and the best interest of the child." This appeal followed.

Dumas timely filed a handwritten *pro se* brief, requesting this court to vacate the custody order as not being in the best interest of J.D. Woods has not filed a brief.

## II.

▆▆▆ "[T]he law will only dictate reversal [of a trial court's determination re-

garding child custody] upon a finding of manifest abuse of discretion." *Johnson v. Washington,* 756 A.2d 411, 418 (D.C.2000) (quoting *Rzeszotarski v. Rzeszotarski,* 296 A.2d 431, 440 (D.C.1972)). "To assure proper review under the abuse of discretion standard, the rules of the court require detailed, written findings of fact and separate conclusions of law on all matters." *Id.*; *see also* Super. Ct. Dom. Rel. R. 52(a) ("In all actions tried upon the facts the Court shall make written findings of fact, separate conclusions of law and judgment."). Moreover, in carrying out the statutory mandate to consider primarily the best interest of the child "[i]n any proceeding between parents in which the custody of a child is raised as an issue," *see* D.C.Code § 16–914(a)(1) (2002), the trial court must address the specific factors enumerated in D.C.Code § 16–914(a)(3).[1]

D.C.Code § 16–914 also establishes · a presumption, applicable except in cases where domestic violence, child abuse, neglect, or parental kidnaping has been established by a preponderance of the evi-

---

1. D.C.Code § 16–914(a)(3) (2002) states that, "in determining the care and custody of a child, the best interest of the child shall be the primary consideration. To determine the best interest of the child, the court shall consider all relevant factors, including, but not limited to:

(A) the wishes of the child as to his or her custodian, where practicable;

(B) the wishes of the child's parent or parents as to the child's custody;

(C) the interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may emotionally or psychologically affect the child's best interest;

(D) the child's adjustment to his or her home, school, and community;

(E) the mental and physical health of all individuals involved;

(F) evidence of an intrafamily offense as defined in section 16–1001(5);

(G) the capacity of the parents to communicate and reach shared decisions affecting the child's welfare;

(H) the willingness of the parents to share custody;

(I) the prior involvement of each parent in the child's life;

(J) the potential disruption of the child's social and school life;

(K) the geographic proximity of the parental homes as this relates to the practical considerations of the child's residential schedule;

(L) the demands of parental employment;

(M) the age and number of children;

(N) the sincerity of each parent's request;

(O) the parent's ability to financially support a joint custody arrangement;

(P) the impact on Temporary Assistance for Needy Families, or Program on Work, Employment, and Responsibilities, and medical assistance; and

(Q) the benefit to the parents."

dence, that joint custody is in the best interest of the child. *See* D.C.Code § 16–914(a)(2) (2002). Furthermore, the court "shall enter an order for any custody arrangement that is agreed to by both parents unless clear and convincing evidence indicates that the arrangement is not in the best interest of the minor child." D.C.Code § 16–914(h). The trial court must place on the record the specific factors and findings that justify any custody arrangement not agreed to by both parents. D.C.Code § 16–914(j).

■ A failure by the trial court to make findings as to each of the relevant factors requires remand. *See Ysla v. Lopez,* 684 A.2d 775, 781 (D.C.1996); *see also Young–Jones v. Bell,* 905 A.2d 275, 277–78 (D.C. 2006); *Pimble v. Pimble,* 521 A.2d 1173, 1175 (D.C.1987); *Tauber v. District of Columbia,* 511 A.2d 23, 28 (D.C.1986).

■ Here, the record discloses none of the factors that would rebut the presumption favoring joint custody. Moreover, the trial court granted sole legal and physical custody of J.D. to Woods without addressing the factors set out in D.C.Code § 16–914(a)(3), without explaining why the court rejected Woods' petition for joint custody and Dumas's agreement to joint custody, without explaining why the court did not follow the home survey recommendation, and without explaining the court's own apparent about-face on the issue of joint legal custody. Thus, the requirements of D.C.Code § 16–914 have not been met, and this court is left without a basis for meaningful appellate review of the custody order.

We therefore vacate the September 20, 2005 custody order and remand the case to the trial court for further proceedings and a disposition consistent with the requirements of D.C.Code § 16–914. The trial court should consider and address the statutory factors, including the presumptions favoring both joint custody and the arrangement agreed to by the parents. The court should make reasonably detailed findings that reflect any change in circumstances and material developments since the date of the court's original custody order. *See Sampson v. Johnson,* 846 A.2d 278, 289 (D.C.2004); *Ysla v. Lopez,* 684 A.2d at 776, 782.

*So ordered.*