Ramon ESTOPINA, Appellant,

v.

Susan O'BRIAN, Appellee.

No. 11–FM–1233.

District of Columbia Court of Appeals.

Argued Jan. 15, 2013.

Decided June 27, 2013.

Brett E. Cohen, Bethesda, MD, for appellant.

Wesley P. Gelb, with whom Anne Marie Jackson, Washington, DC, was on the brief, for appellee.

Before WASHINGTON, Chief Judge, OBERLY, Associate Judge, and PRYOR, Senior Judge.

Washington, Chief Judge:

Appellant Ramon Estopina appeals from the Superior Court judgment granting his ex-wife, appellee Susan O'Brian, joint legal custody and primary physical custody of their four-year-old child, I.E.O., and allowing Ms. O'Brian to move with I.E.O. from the District of Columbia to Virginia Beach, Virginia. Appellant argues that the trial court erred by failing to acknowledge the presumption in favor of joint custody in its Final Judgment and that it abused its discretion in determining that the best interests of the child were served by granting appellee primary physical custody and the right to relocate. For the reasons stated below, we affirm the trial court's judgment.

## I.

Appellant and Ms. O'Brian were married in 2005 and their only child, I.E.O., was born in December 2006. The parties separated in 2009. Appellant filed his Complaint for Custody on April 19, 2010. Ms. O'Brian filed a Complaint for Legal Separation on June 30, 2010 and a Motion for Temporary Custody on July 29, 2010, seeking permission to relocate from the District of Columbia to Virginia Beach, Virginia, with I.E.O. The Superior Court consolidated these cases.

At trial, evidence was admitted that Ms. O'Brian stayed at home with the child from his birth until 2009. Appellant regularly traveled for work for extended periods during that time, but shared responsibility for daily tasks and care of I.E.O. with Ms. O'Brian, including attending doctors' appointments and events. The parties owned a home in Georgetown, but once they separated and appellant lost his job at the end of 2010,[1] appellant could no longer afford to pay the mortgage. Ms. O'Brian moved to Arlington, Virginia, but had difficulty affording her rent and great difficulty bringing I.E.O. to school in the District of Columbia before she had to be at work in the morning. Both parties agreed I.E.O. would have to change schools because they could not afford to continue sending I.E.O. to the private school in the District of Columbia where he had been attending preschool. Ms. O'Brian's sister testified that if Ms. O'Brian and I.E.O. moved to Virginia Beach, Virginia, the child could attend the Goddard School, an early childhood education school that she owned, where Ms. O'Brian would also be able to work as a teacher, thus allowing I.E.O. to attend free of charge. Appellant testified to a number of financially viable school options in the District of Columbia, some of which included Spanish immersion programs, which was important since both parents wanted the child exposed to Spanish culture. Appellant testified that some of the schools had guaranteed spots, but some involved a lottery process, including the schools with Spanish immersion programs. Ms. O'Brian's sister and father, who both lived in Virginia Beach, testified that they and the sister's children had a very close relationship with I.E.O. Ms. O'Brian and appellant did not have family in the District of Columbia.

1. Appellant found employment post-trial, but pre-judgment, which the trial court acknowledged in its ruling.

The trial court granted joint legal custody and primary physical custody to Ms. O'Brian and allowed her to move with I.E.O. from the District of Columbia area to Virginia Beach. The trial court awarded appellant regular visitation consisting of alternating weekends commencing Friday evening and continuing until Sunday evening. In addition, the Final Judgment set forth an alternating holiday schedule as well as a regular summer vacation schedule that granted appellant five weeks with the child during the summer. Appellant was also granted daily access to speak to the child by phone or webcam.

In ordering this custody arrangement, the trial court placed special emphasis on the strong relationship I.E.O. had with his family in Virginia Beach. The trial court also gave significant weight to the fact that Ms. O'Brian was offered a teaching position at the Goddard School in Virginia Beach and would be able to take I.E.O. to school each day where he would also receive support in his transition from his aunt who owned the school. The court recognized appellant's strong desire to expose I.E.O. to the Spanish language and culture, and noted that although the Goddard School did not offer a Spanish immersion program, it did offer a Spanish class, and placement in the Goddard School was a guaranteed opportunity unlike placement in the District of Columbia programs. The trial court also gave significant weight to the fact that appellant traveled frequently for his job and had been able to maintain a strong relationship with his son despite the separation.

## II.

Appellant argues that the trial court failed to acknowledge the presumption in favor of joint custody in its Final Judgment and failed to make findings that the presumption was rebutted, thus committing an error of law. Appellant's argument, however, is based on the false premise that joint physical custody was not awarded to the parties. Appellant argues that because each parent was not awarded equal time with I.E.O. and the custody arrangement did not allow flexibility to spend additional time with I.E.O. during the week, the trial court's award was not one of joint custody

■ This court, however, has held that a custody arrangement constitutes "joint physical custody" so long as it involves some sort of shared custody, such as primary physical custody awarded to one parent and visitation rights to another. *See Hutchins v. Compton*, 917 A.2d 680, 682 (D.C.2007) (citing *Taylor v. Taylor*, 306 Md. 290, 508 A.2d 964, 967 (1986)); *see also Taylor*, 508 A.2d at 967 ("Shared physical custody may, but need not, be on a 50/50 basis, and in fact most commonly will involve custody by one parent during the school year and by the other during summer vacation months, or division between weekdays and weekends, or between days and nights."). Here, the trial court awarded primary physical custody to appellee while appellant was granted regular visitation consisting of alternating weekends and an alternating holiday schedule. In addition, appellant was granted visitation with I.E.O. for five weeks during the summer. Because a custody arrangement that grants primary physical custody to one parent and visitation to the other is considered a joint custody arrangement, the trial court did not fail to honor the presumption in favor of joint custody and appellant's claim is without merit.

## III.

■ Appellant also argues that the trial court abused its discretion in awarding primary physical custody to appellee and

in allowing her to relocate to Virginia Beach. Specifically, appellant argues that the trial court gave undue weight ·to the value of educational opportunities available in Virginia Beach, the positive influence of the maternal family in Virginia Beach, and the frequency with which appellant traveled for work. Appellant further argues that the trial court gave too little weight to the benefit to the child of being raised by both parents and the disruption of moving a child away from one parent.

This court will reverse a trial court's custody decision only upon a finding of an abuse of discretion. *Dumas v. Woods,* 914 A.2d 676, 678 (D.C.2007). In order to determine whether the trial court abused its discretion, this court must look to whether the trial court considered "all relevant factors and no improper factor ... and then [to] evaluate whether the decision is supported by substantial reasoning ... drawn from a firm factual foundation in the record." *In re A.M.,* 589 A.2d 1252, 1257–58 (D.C.1991) (internal quotations and citations omitted). There is no abuse of discretion merely because there is evidence in the record that would have allowed this court to uphold the opposite conclusion. *Prost v. Greene,* 652 A.2d 621, 626 (D.C.1995).

Here, the trial court weighed all of the appropriate factors, and no inappropriate factors, in determining what custody arrangement would be in the best interests of the child. Indeed, the trial court thoroughly considered each of the factors necessary to determining the best interests of the child pursuant to D.C.Code § 16–914(a)(3) (2001):

"(A) the wishes of the child as to his or her custodian, where practicable;

(B) the wishes of the child's parent or parents as to the child's custody;

(C) the interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may emotionally or psychologically affect the child's best interest;

(D) the child's adjustment to his or her home, school, and community;

(E) the mental and physical health of all individuals involved;

(F) evidence of intrafamily offense as defined in section 16–1001(5);

(G) the capacity of the parents to communicate and reach shared decisions affecting the minor child's welfare;

(H) the willingness of the parents to share custody;

(I) the prior involvement of each parent in the child's life;

(J) the potential disruption of the child's social and school life;

(K) the geographical proximity of the parental homes as this relates to the practical considerations of the child's residential schedule;

(L) the demands of parental employment;

(M) the age and number of children;

(N) the sincerity of each parent's request;

(O) the parent's ability to financially support a joint custody arrangement;

(P) the impact on Temporary Assistance for Needy Families, or Program on Work, Employment, and Responsibilities, and medical assistance; and

(Q) the benefit to the parents."

*See Dumas,* 914 A.2d at 679 (holding that the trial court must make findings as to each of the relevant factors).

However, because a parent's proposed geographic relocation may uproot the child from important relationships within the child's former community and present logistical challenges to the ability of the child and the non-custodial

parent to maintain a close relationship, additional factors must be considered when a petition for custody includes a request to relocate with the child. *See Samuel v. Person*, 138 Daily Wash. L. Rptr. 1537, 1543 (D.C.Super. Ct. June 15, 2010). In *Samuel v. Person*, Judge Neal E. Kravitz undertook a review of the various factors that other courts, state legislatures, and peer-reviewed social science researchers treated as important when assessing the impact that relocation will have on a child. Judge Kravitz found that there is general agreement among these groups that several factors are important to consider in determining the best interests of a child whenever a custody case involves a request for geographic relocation of the child with one of the child's parents. We agree that the following factors are relevant and appropriate factors for a trial court to consider in any relocation request, including those made at the time a custody petition is filed: (1) "the strength of the relationship of the child with each parent"; (2) "the individual resources, temperament, and special development needs of the child"; (3) "the psychological stability of the relocating parent and the parenting effectiveness of both parents"; (4) "the success of the current custody arrangement and the effect the proposed relocation will have on its stability and continuity"; (5) "the advantages and disadvantages of the proposed relocation, including the potential disruption of the child's social and school life and a comparison of the educational, health, and extracurricular opportunities the child would have in each location"; (6) "any benefits to the child likely to be derived from the parents' improved circumstances"; (7) "the feasibility of an alternative visitation and access schedule, including the geographic proximity of and travel time between the parental homes as this relates to the practical consider-

ations of the child's residential schedule"; (8) "the motivations of the parents in proposing and opposing relocation"; (9) "the effect the move will have on the child's relationship with the noncustodial parent, considering the extent to which visitation rights have been allowed and exercised, the level of support the custodial parent has shown for the continuation and growth of the child's relationship with the non-custodial parent, and whether there is any established pattern of promoting or thwarting that relationship"; and (10) "the extent of any conflict between the parents and the recentness of the marital separation." *Id.* at 1544–45 (original emphasis deleted).

Here, in addition to the statutory factors previously discussed, the trial court considered many of these additional relocation factors before reaching a custody decision in this case. After weighing these factors, the trial court found that both appellant and Ms. O'Brian had been actively involved in I.E.O.'s care and that I.E.O. had a strong relationship with both parents. The trial court gave great weight to the fact that I.E.O. also had a close relationship with Ms. O'Brian's family in Virginia Beach that "is a strong positive influence ... and provides him with emotional stability." The trial court considered the educational, including Spanish language, opportunities for I.E.O. and the job opportunities for Ms. O'Brian in Virginia Beach, and found them to be more stable than the opportunities in the District of Columbia. Moreover, the trial court found that Ms. O'Brian supported keeping the child involved in his Spanish heritage and taking the child to Spain every year.

The trial court also noted that the bond between appellant and I.E.O. was strong and would continue if I.E.O. relocated since Ms. O'Brian believed that I.E.O

should have a close relationship with his father and indicated that she wanted to foster that relationship. The trial court also found that any problems arising as a result of the physical distance could be partly addressed through daily phone calls, holiday and alternating weekend visits, and the five weeks of summer visitation. Moreover, the trial court noted that even though appellant's prior job had required him to travel extensively and regularly, he had been able to maintain a close relationship with I.E.O. Finally, the trial court found that both parents appeared capable of addressing co-parenting issues as a result of the relocation and any developmental needs I.E.O. might have in the new environment, and that I.E.O.'s close relationship with his cousins in Virginia Beach would "add to the support network [I.E.O.] and [Ms. O'Brian] have in Virginia Beach." These factors[2] support awarding joint legal custody and primary physical custody to Ms. O'Brian and allowing Ms. O'Brian to relocate to Virginia Beach with I.E.O.

A review of the record reveals that the trial court, in considering all of the relevant factors, did not make any clearly erroneous findings of fact and that its conclusions regarding both primary physical custody and relocation flowed naturally from the substantial evidence introduced at trial. A trial court abuses its discretion only if no valid reason is given or can be discerned for its decision. *Johnson v. United States,* 398 A.2d 354, 364 (D.C. 1979). While this court might have weighed the relevant factors differently, it is clear that the trial court in this case carefully balanced the various relevant factors. *See Johnson v. Washington,* 756 A.2d 411, 418 (D.C.2000) ("Child custody cases present complex factual situations, and we necessarily rely on the trial court's careful balancing of the various factors that may impact the child."); *Dorsett v. Dorsett,* 281 A.2d 290, 292 (D.C.1971) ("We cannot say that in this instance the trial judge abused his discretion, even though other evidence in the record might have led us to uphold a decision going the opposite way."). Therefore, we are satisfied that the trial court did not abuse its discretion in granting primary physical custody, including the right to relocate, to appellee.

### IV.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.[3]

*So ordered.*

---

**2.** While the trial court did not specifically consider "the motivations of the parents in proposing and opposing relocation," neither party suggested that the other had an ulterior motive for pressing their respective positions. Therefore, there was no reason for the court to consider this factor in reaching its decision.

**3.** In her brief on appeal, appellee contends that appellant failed to perfect his appeal because he filed his Notice of Appeal while appellee's Motion to Alter or Amend Final Judgment of Divorce was pending and never filed a Notice of Appeal from the Amended Final Judgment or otherwise sought to amend his initial Notice of Appeal. In addition, appellee argues that appellant failed to file an appendix containing the judgment in question as required by D.C.App. R. 30(a)(1)(C) and that he failed to serve on appellee, within 20 days after the Clerk had notified the parties that the record was filed, a designation of the parts of the record appellant intended to include in the appendix and a statement of the issues appellant intended to present for review pursuant to D.C.App. R. 30(b)(1). As a result, appellee argues, appellant's appeal should be dismissed. As we affirm the trial

court's judgment, which was favorable to appellee, we need not decide the merit of appellee's procedural claims.