*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 16-FM-257 & 16-FM-310

A.C., APPELLANT/CROSS-APPELLEE,

v.

N.W., APPELLEE/CROSS-APPELLANT.

FILED 06/01/17
District of Columbia
Court of Appeals
Julio Castillo
Clerk of Court

Appeals from the Superior Court
of the District of Columbia
(DRB-1589-10)

(Hon. Robert R. Rigsby, Motion Judge)
(Hon. Robert Okun, Motion Judge)

(Argued April 6, 2017                                    Decided June 1, 2017)

*Leah Quaile*, Neighborhood Legal Services Program, with whom *Keeshea Turner Roberts*, Neighborhood Legal Services Program, was on the brief, for appellant/cross-appellee.

*Alan B. Soschin* for appellee/cross-appellant.

Before BECKWITH and EASTERLY, *Associate Judges*, and STEADMAN, *Senior Judge*.

BECKWITH, *Associate Judge*:  Appellant A.C., the mother of minor child A.C.W., sought and obtained a temporary order suspending custody and barring all visitation by appellee N.W., the child's father, pending a police investigation into

an allegation that N.W. had sexually abused the child. When the investigation ended without prosecution, N.W. filed a motion to vacate the temporary custody order, and after a four-day evidentiary hearing, the trial court granted it, with the important proviso that all visits between N.W. and A.C.W. would be supervised. A.C. now appeals the trial court's vacatur of the temporary custody order, claiming that the trial court erred in placing the burden of proof on her rather than on N.W., arbitrarily disregarded expert testimony presented at the hearing, and failed to make sufficient findings. Although we reject the first two claims, we agree that the trial court's findings of fact were insufficient. Because, however, the evidence presented would have justified the trial court's ultimate conclusion that the temporary order should be vacated, we do not reverse but instead remand the record so that the court can clarify the factual basis for its determination.

## I.

Appellant A.C. and appellee N.W. are the mother and father, respectively, of A.C.W., a girl born in February 2010, shortly after A.C. and N.W. divorced. A.C. and N.W. resolved, through a consent order entered in January 2012, that they would share legal and physical custody. Pursuant to the consent order, A.C.W. resided with A.C., and N.W. had visitation every other weekend and at certain other specified times.

## A. Temporary Custody Order

In March 2015, A.C. filed a pro se emergency motion stating that N.W. was "under investigation for child abuse" and requesting that N.W.'s "[v]isitation [with A.C.W.] be suspended until the investigation of child abuse is concluded." In an ex parte hearing before Associate Judge Robert Rigsby, A.C. testified that A.C.W. was "suffering sexual abuse by" N.W. and that A.C.W. had "show[n] and verbalized . . . what was happening." A.C. testified that there was a "detective in Virginia" investigating N.W. and that the detective had recommended filing an emergency motion to suspend visitation "for [A.C.W.'s] safety until [the police] conclude" the investigation. Judge Rigsby granted A.C.'s motion, reasoning that in light of A.C.'s "allegations of sexual abuse under sworn testimony," it was "in the best interest for temporary sole legal and physical custody to be awarded to mom with no visitation to dad." Judge Rigsby stressed that the order was "temporary" and scheduled a status hearing for the following month.

## B. Motion To Vacate

N.W. filed a motion to vacate the temporary custody order in June 2015, after the police investigation closed without prosecution. Judge Rigsby presided over a four-day hearing, in which both parties offered testimony and other

evidence.[1]

N.W. called a single witness in support of his motion to vacate, Detective Michael Hengemuhle of the Fairfax County Police Department (FCPD). Detective Hengemuhle had supervised the FCPD's investigation into N.W.'s alleged sexual abuse of A.C.W. He testified that after conducting "a medical examination of the minor child and DNA testing, as well as interviews with [A.C.], [A.C.'s] family, [N.W.], and [N.W.'s] family," the FCPD had informed N.W. "that no criminal charges would be filed."

In her case in opposition to N.W.'s motion, A.C. called Jessica Lopez, A.C.W.'s therapist at Safe Shores, the District's Children's Advocacy Center,[2] to testify as an expert in "clinical mental health."[3] A.C. represented that she was not proffering Ms. Lopez as an expert in "child sexual abuse." Ms. Lopez testified about the "typical trauma responses" that she believed A.C.W. had exhibited and explained the "trauma-focused cognitive behavioral therapy" that she had been

---

[1] The hearings were held on June 30, September 15, September 18, and November 25, 2015. The lengthy intermissions appear to be the result of scheduling difficulties on the part of the trial court and counsel.

[2] *See* D.C. Code § 4-1301.02 (2B) (2012 Repl.).

[3] N.W. did not contest Ms. Lopez's qualification to testify in this capacity.

using to treat A.C.W. She also testified about statements that A.C.W. had allegedly made, including A.C.W.'s early statements that N.W. "kisse[d] [her] on the lips and [that she] d[id]n't like that" and that N.W. is a "dragon with fire" who had "hurt" her, and her later statement (after several months of weekly therapy) that N.W. had "put his snake in [her] pilu-pilu and [that she had] felt dirty."[4] Ms. Lopez opposed any resumption in visitation between N.W. and A.C.W. because she thought it would be "very detrimental to [A.C.W.'s] therapy and her progress."

A.C. also testified.[5] She testified that A.C.W. had first indicated that she had been sexually abused on March 2, 2015, a day after A.C.W.'s final visit with N.W. A.C. stated that A.C.W. indicated that N.W. had "kissed her on her private part."[6] A.C. took A.C.W. to her pediatrician a week later, but it was not until a couple of

---

[4] Ms. Lopez testified that A.C.W. used the word "snake" to mean "penis" and used the word "pilu-pilu" to mean "vagina."

[5] A.C. also called Gail Aycox, Program Coordinator for the District's Supervised Visitation Center (SVC). Ms. Aycox testified that before the sexual-abuse allegations arose, A.C. and N.W. had used the SVC to exchange A.C.W. from one parent to the other on sixty occasions and that A.C.W. was reluctant to leave A.C. and go with N.W. on twenty-two of those occasions, extending back to June 2012.

[6] A.C.'s testimony that A.C.W. had disclosed abuse by N.W. was admitted not for the truth of the matter disclosed but for the disclosure's effect on the listener (here, A.C.).

weeks after that that A.C.W. had a full sexual-abuse examination.[7]  A.C. testified that although she had given A.C.W. baths on the nights after A.C.W.'s final visits with N.W., she had not noticed any bruising, bleeding, or other injuries.  A.C. testified that she believed that the therapy with Ms. Lopez had helped A.C.W. but that A.C.W. was "still racked with fear" and was exhibiting "advanced sexual behavior."

N.W. testified in rebuttal.  He denied that he had ever abused A.C.W.  N.W. testified that he had had only four overnight visits with A.C.W. in her entire life and that because he lived in New York City and did not have a local residence, he would typically spend his weekend visits with A.C.W. at his sisters' home in Virginia or at museums.  N.W. also testified that shortly after A.C.W. was born, A.C. told him that she wanted sole custody and that if he "sought joint custody[,] . . . she was going to accuse [him] of abuse."  N.W. asserted that A.C. had in the past made false allegations that he had abused her and A.C.W. and that they had

---

[7]  A.C.W.'s medical records were never entered in evidence, and N.W.'s counsel asked the trial court to infer that there was no evidence in the medical records to support the allegation of sexual abuse.  *See* Standardized Civil Jury Instructions for the District of Columbia, No. 2-17 (2015 rev. ed.) ("If a party to this case failed to produce relevant evidence which was . . . particularly . . . available to that party, and that party did not sufficiently explain why it was not produced, then you may infer that the evidence would have been unfavorable to that party." (brackets omitted)).

been determined by the relevant authorities to be unfounded.

### C.  Judge Rigsby's Order Granting the Motion To Vacate

Several months after the end of the hearing, Judge Rigsby issued an order granting N.W.'s motion to vacate—the order at issue in this appeal.  He summarized much of the hearing evidence but did not make any findings as to whether the abuse occurred or whether A.C.W. would be harmed by resumption in visitation.  The judge then set forth the relevant legal principles, including, significantly, that in the absence of a finding by a preponderance of the evidence that a parent has committed an intrafamily offense, there is a presumption that joint custody is in the best interest of the child, and that a parent seeking a modification of a custody award is required to prove a substantial and material change in circumstances.  *See* D.C. Code § 16-914 (a)(2), (f)(1) (2012 Repl.).[8]  In light of these principles, Judge Rigsby "f[ound] that [A.C.] ha[d] not met her burden."  He therefore vacated the temporary custody order but required that future visitation between N.W. and A.C.W. should be supervised.[9]  Associate Judge Robert Okun,

---

[8]  All subsequent D.C. Code citations are to the 2012 Replacement, unless otherwise noted.

[9]  N.W. had proposed that visitation be supervised, even though the 2012 custody arrangement permitted unsupervised visits.  N.W. had indicated that this

(continued…)

who took over the case when Judge Rigsby rotated out of the Domestic Relations Branch, stayed Judge Rigsby's order vacating the temporary custody order, pending this appeal.

## II.

We review the trial court's order vacating the temporary custody order under the same "manifest abuse of discretion" standard under which we review a custody decision. *Khawam v. Wolfe*, 84 A.3d 558, 570 (D.C. 2014). To determine whether the trial court abused its discretion, we assess "whether the trial court considered all relevant factors and no improper factor and . . . evaluate whether the decision is supported by substantial reasoning drawn from a firm factual foundation in the record." *Estopina v. O'Brian*, 68 A.3d 790, 793 (D.C. 2013) (quoting *In re A.M.*, 589 A.2d 1252, 1257–58 (D.C. 1991)) (alterations and internal quotation marks omitted). We review the trial court's legal determinations de novo and its findings of facts for clear error. *Jordan v. Jordan*, 14 A.3d 1136, 1146 (D.C. 2011).

A.C. asserts three claims of error. First, A.C. claims that the trial court misallocated the burden of proof and failed to apply the rebuttable presumption

---

(…continued)
was necessary as part of a "plan for the reintroduction of the [m]inor [c]hild and the [father]," given that they had not seen each other in a number of months.

that it is against the best interest of the child for a perpetrator of an intrafamily offense to have custody. Second, A.C. claims that the trial court arbitrarily disregarded Ms. Lopez's expert testimony. Third, A.C. claims that the trial court made insufficient findings of fact to support its order vacating the temporary custody order.[10] We address these claims in turn.

## A. Burden of Proof

A.C. contends that the trial court erroneously failed to recognize that "[a]s the party seeking to change the existing temporary custody order, it was [N.W.'s] burden to prove by a preponderance of the evidence that there had been a substantial and material change in circumstances and that a change was in the best interests of the child." She further contends that N.W. "incurred an additional burden of proof when [A.C.] presented evidence that [N.W.] had committed an intrafamily offense" and that the trial court erroneously failed to require N.W. to

---

[10] A.C. describes her three arguments somewhat differently and in a different order: (1) "[t]he trial court abused its discretion when it failed to address the requisite factors in determining the best interests of the child"; (2) "[t]he trial court committed an error of law when it placed the burden of proof on appellant [A.C.] rather than appellee [N.W.]"; and (3) "[t]he trial court improperly disregarded appellant [A.C.'s] uncontradicted expert and lay testimony regarding the child's therapy and mental health when it awarded appellee [N.W.] custody and visitation of the minor child."

meet this burden.  Both contentions are without merit.

D.C. Code § 16-914 (f) provides that a party seeking to modify an "award of custody" must prove by a preponderance of the evidence that "there has been a substantial and material change in circumstances and that the modification . . . is in the best interest of the child."  A.C.'s assertion that this provision placed the burden of proof on N.W. is incorrect because the temporary custody order was not an "award of custody" and N.W.'s motion to vacate it was thus not a motion to modify an award of custody.  The temporary custody order was not an award of custody as it merely suspended, temporarily, the preexisting 2012 custody award. A.C. was explicit when she filed her ex parte emergency motion for the temporary custody order that she only sought an order that would last for the duration of the investigation into the sexual-abuse allegation, and the trial court was likewise very clear in granting the emergency motion that the order would only have temporary effect.  That the temporary custody order was not an award of custody is confirmed by the fact that in issuing it, the trial court did not follow the requirements of § 16-914 (f) required for issuing a revised custody award.[11]  The court did not find—and

---

[11]  This does not mean that the trial court was without authority to issue the temporary custody order.  *Cf. Ysla v. Lopez*, 684 A.2d 775, 780 (D.C. 1996) (holding that despite the lack of a statutory mandate, the trial court has the "inherent authority" to award joint custody to unmarried parents).  The trial court

(continued…)

could not have found—that A.C.'s ex parte representations proved by a preponderance of the evidence that there had been a substantial and material change of circumstances and that modification was in A.C.W.'s best interest.[12]

A.C. is also mistaken when she asserts that "evidence that [N.W.] had committed an intrafamily offense" was sufficient to trigger a rebuttable presumption that N.W. should not have custody of A.C.W. The relevant statute states that "[t]here shall be a rebuttable presumption that joint custody is not in the best interest of the child . . . if a judicial officer *finds by a preponderance of the evidence* that an intrafamily offense . . . has occurred." D.C. Code § 16-914 (a)(2) (emphasis added); *see also id.* § 16-914 (a-1) ("The party found to have committed

_____

(…continued)
recognized that N.W. would pose a danger to A.C.W. if the allegations of sexual abuse were true but also recognized the limited information available in the ex parte proceeding, and thus fashioned a sensible short-term remedy.

[12] Although it may be possible that a party could obtain a custody modification without satisfying the requirements of D.C. Code § 16-914 (f) and that the other party could waive or forfeit his or her right to challenge it, that is not what happened here. At the first status hearing after the court granted the emergency protective order, counsel for N.W. represented that he "d[id]n't think [the court] had any reasonable alternative other than to enter the [o]rder that [it] did" and that the "the investigation [into the sexual-abuse allegations] need[ed] to . . . run its course" before any action on the temporary custody order should be taken. Counsel for A.C. agreed. N.W. did not concede that the temporary custody order was a permanent custody order, and the clear implication of both parties' statements was that it was not.

an intrafamily offense has the burden of proving that visitation will not endanger the child or significantly impair the child's emotional development."); *P.F. v. N.C.*, 953 A.2d 1107, 1114–15 (D.C. 2008). Here, there was never a judicial finding by a preponderance of the evidence that N.W. committed an intrafamily offense. The trial court's statement at the ex parte emergency hearing that it was "bas[ing]" its grant of a temporary custody order on the "allegations of sexual abuse" did not constitute such a finding, nor did A.C.'s mere introduction of evidence of sexual abuse at the hearing on the motion to vacate.

Accordingly, N.W. did not bear the burden of proving that the temporary custody order should be vacated. Rather, given that the basis for the temporary custody order—the criminal investigation—had ended, A.C. bore the burden of proving that the temporary custody order should be continued for some other purpose. Essentially, she was seeking to convert the temporary custody order into a permanent one, thus modifying the preexisting 2012 custody arrangement. Therefore, A.C. was required to prove a substantial and material change in circumstances and to demonstrate that her proposed custody arrangement would be in the best interest of A.C.W. D.C. Code § 16-914 (f). And absent a finding by the trial court that N.W. committed an intrafamily offense, A.C. was required to rebut the presumption against joint custody. *Id.* § 16-914 (a)(2).

## B. Expert Testimony

A.C. next argues that the trial court was required to credit the testimony of A.C.W.'s therapist, Ms. Lopez, because N.W. did not call his own expert to rebut her and because her testimony was "uncontradicted." A.C. contends that "the only conclusion that can be drawn from [Ms. Lopez's testimony] is that visitation [with N.W.] would be traumatizing to the child and contrary to the child's interests," and she contends that the trial court, in vacating the temporary custody order, erroneously "departed" from this conclusion.

We reject A.C.'s argument because it is well established that it is "the prerogative of the trial court," not this court's, "to determine credibility and weigh the evidence." *In re M.L.*, 28 A.3d 520, 530 (D.C. 2011). While "[t]he trial court may not arbitrarily disregard, disbelieve or reject an expert's uncontradicted testimony," this court "will not pit [its] judgment against that of the finder of fact who saw and heard the witness testify" so long as "there is some basis in the record for the judge's refusal to accept an expert's conclusion." *Prost v. Greene*, 652 A.2d 621, 629 (D.C. 1995) (quoting *Rock Creek Plaza-Woodner Ltd. P'ship v. District of Columbia*, 466 A.2d 857, 859 (D.C. 1983), and *Richbow v. District of Columbia*, 600 A.2d 1063, 1066–67 (D.C. 1991)) (internal quotation marks and brackets omitted); *see also Khawam*, 84 A.3d at 570 ("Our review of a trial court's

consideration of expert testimony is . . . deferential."). The record before us shows that there was an adequate factual basis for the trial court to give little weight to Ms. Lopez's testimony.[13]

First of all, there was other evidence in the record that arguably contradicted Ms. Lopez's testimony that A.C.W. was exhibiting typical symptoms of trauma—or that, even if it did not contradict Ms. Lopez's testimony that A.C.W. was exhibiting these symptoms, could at least have supported an inference that the symptoms were not the result of N.W.'s conduct and thus justified the court in disregarding Ms. Lopez's no-visitation recommendation. Most significantly, N.W. testified that he did not abuse A.C.W. and suggested, through his testimony, that A.C.W.'s allegations were the product of a scheme by A.C. to deprive him of custody and visitation.

There are also grounds intrinsic to Ms. Lopez's testimony that would have justified the trial court in giving it little weight. A.C. expressly disclaimed that she was offering Ms. Lopez as an expert in "child sexual abuse," and represented that she was offering Ms. Lopez as an expert in "clinical mental health." Accordingly,

---

[13] As explained in the following section, however, the trial court's failure to make sufficient findings—including findings on the weight given to Ms. Lopez's testimony—was error and requires a remand.

Ms. Lopez's testimony was admitted for the purpose of explaining A.C.W.'s then-current mental health and the effect that further visitation with N.W. would have on her health and treatment progress; Ms. Lopez did not give an opinion on whether A.C.W. had actually been abused by N.W., and her testimony would not have been admissible for this purpose. *See Oliver v. United States*, 711 A.2d 70, 73 (D.C. 1998) ("[C]ourts generally do not permit experts to make direct credibility determinations in child sexual abuse matters, or to testify that a child has been sexually abused.").

Moreover, the trial court could appropriately have inferred from the fact that Ms. Lopez was A.C.W.'s therapist, not a forensic investigator, that her primary goal in her interactions with A.C.W. was not to develop an accurate factual account of what did or did not happen to the child, but to treat her purported symptoms of trauma. Parts of Ms. Lopez's testimony could have supported an inference that she uncritically accepted A.C.'s description of N.W.'s alleged abusive behavior towards her and A.C.W. For example, when N.W.'s counsel asked Ms. Lopez on cross-examination why she had never spoken to N.W., she explained that "[a]t [Safe Shores] we speak to the—in this case mom because the abuser is the father and so we do not speak to the abuser," and when pressed on how she knew that N.W. was "the abuser," Ms. Lopez admitted that the

information came from A.C. during intake. The trial court could properly have found that Ms. Lopez's apparent prejudgment of key facts undermined the reliability of her recommendation that N.W. should not have visitation with A.C.W. *Cf. District of Columbia v. Wilson*, 721 A.2d 591, 600 (D.C. 1998) (explaining that an expert's "assumptions . . . as well as the conclusions drawn therefrom, are subject to rigorous cross-examination," which provides a basis for the finder of fact to "assess the reliability of the expert testimony" (quoting *In re Melton*, 597 A.2d 892, 903 (D.C. 1991))); *see also* 2 David L. Faigman et al., *Modern Scientific Evidence: The Law and Science of Expert Testimony* § 16:21 (2016-2017 ed.) (summarizing research on "how an interviewer's favored hypothesis can [adversely] influence the accuracy of young children's reports" to the interviewer).[14]

---

[14] Other parts of Ms. Lopez's testimony could have supported an inference that her treatment regimen created the possibility of suggestion and that A.C.W.'s reports of sexual abuse to Ms. Lopez—and the conclusions that Ms. Lopez drew from those reports—were thus unreliable. *See Kennedy v. Louisiana*, 554 U.S. 407, 443 (2008) (noting that "children are highly susceptible to suggestive questioning techniques like repetition, guided imagery, and selective reinforcement"); *In re Jam.J.*, 825 A.2d 902, 915 n.7 (D.C. 2003). Ms. Lopez saw A.C.W. in weekly cognitive-behavioral-therapy sessions in which she would engage A.C.W. in various "play-modologies," like drawing, completing worksheets, reading books, and playing with dolls. Recent studies have suggested that repeated therapy sessions involving play and imagery may lead a child to construct false memories. *See* Faigman et al., *supra*, §§ 16:18, 16:25. Notably, it

(continued…)

It is unnecessary to discuss here any further grounds for the trial court to have disregarded Ms. Lopez's testimony. The point is that there is "some basis" in the record for the trial court to have given little weight to Ms. Lopez's testimony. A.C.'s argument that the trial court was required to credit Ms. Lopez's testimony in its entirety is therefore without merit.

## C. Trial Court's Findings

A.C.'s final claim is that "[t]he trial court abused its discretion when it improperly modified the parties' custody and visitation of the minor child without addressing the requisite 'best interest of the child' factors." According to A.C., the trial court was required to expressly address all seventeen of the best-interest-of-the-child factors set forth in D.C. Code § 16-914 (a)(3) and to address in detail the "critical" factor whether N.W. committed an intrafamily offense. The trial court did not make explicit findings on the § 16-914 (a)(3) factors or make a finding as to whether N.W. abused A.C.W.

N.W.'s motion to vacate plainly "raised [the custody of A.C.W.] as an

---

(…continued)
was only after several months of therapy sessions that A.C.W. allegedly told Ms. Lopez that N.W. had "put his snake in [her] pilu-pilu" (an allegation not supported by any medical evidence in the record).

issue," and thus "the best interest of the child" should have been the trial court's "primary consideration." D.C. Code § 16-914 (a)(1)(A). It does not follow, however, that the trial court was required to set forth in the record explicit findings on A.C.W.'s best interests—let alone on each and every best-interest-of-the-child factor in § 16-914 (a)(3). In the past this court has held that in making a custody award, the trial court is required to make express findings on each of the relevant § § 16-914 (a)(3) factors. *Dumas v. Woods*, 914 A.2d 676, 679 (D.C. 2007); *see also P.F.*, 953 A.2d at 1112–13. But here, the trial court did not issue a custody award. It vacated the temporary custody order that had suspended the custody award previously in place.

Further, the language of D.C. Code § 16-914 (a)(3) only requires a court to consider the best-interest-of-the-child factors when "determin[ing] the best interest of the child." But the procedural posture below makes it clear that the trial court was not required to make such a "determin[ation]." Before the trial court were N.W.'s motion to vacate the temporary custody order and A.C.'s opposition to the motion. The court was thus required to determine whether the circumstances justifying the temporary custody order still existed (that is, whether the criminal investigation into the alleged abuse was still pending), and if not, whether A.C. had demonstrated that the temporary custody order should nonetheless continue as a

permanent custody order. See *supra* Part II.A. The best interest of A.C.W. had no bearing on the first of these inquiries. The best interest of A.C.W. did have bearing on the second inquiry, but because A.C. bore the burden of showing "a substantial and material change in circumstance" *and* that the new award would be "in the best interest of the child," D.C. Code § 16-914 (f), the trial court could properly have resolved this issue by finding no substantial and material change, rendering it unnecessary to make express findings on the best interest of the child.[15]

Notwithstanding that the trial court was not required to set forth express reasoning on the best-interest-of-the-child factors, the trial court was required to make findings of fact and explicate its reasoning in sufficient detail to permit "meaningful appellate review." *Dumas*, 914 A.2d at 679; *see also* Super. Ct. Dom. Rel. R. 52 (a) (requiring a decision on a motion to modify a previous court order to include findings of fact); *Pimble v. Pimble*, 521 A.2d 1173, 1175 (D.C. 1987). Here, the trial court's findings of fact comprised only a summary of the hearing evidence. The court did not explain which evidence it gave weight to, nor did the court explain how any of the evidence supported its ultimate conclusion that A.C.

---

[15] Had the trial court found a substantial and material change in circumstances, the trial court would have been required to make an express determination as to A.C.W.'s best interests. *See Dumas*, 914 A.2d at 679; *P.F.*, 953 A.2d at 1112–13.

"ha[d] not met her burden." The court did not justify its apparent conclusion that A.C. had failed to show a substantial and material change in circumstances or had failed to show that converting the temporary custody order into a permanent award was in A.C.W.'s best interests. Critically, the trial court did not make an express finding on the issue whether A.C.W. had been abused by N.W. (an issue bearing on the question whether the presumption against joint custody applied), and it likewise did not make an express finding on the issue whether A.C.W. would be traumatized, as Ms. Lopez said she would be, if she resumed visitation with N.W. (a consideration bearing on both the substantial-and-material-change-in-circumstances and best-interest-of-the-child inquiries).[16] *See P.F.*, 953 A.2d at

---

[16] A.C. points out one other factor that she believes the trial court was required to explicitly address in detail: "the wishes of the child as to . . . her custodian." D.C. Code § 16-914 (a)(3)(A); *see P.F.*, 953 A.2d at 1117–18. Although A.C.W. did not testify, A.C. notes that Ms. Lopez testified that A.C.W. told her she "d[id]n't want to see" N.W. and that he was "dead to [her]." N.W. argues (in one sentence) that the testimony was inadmissible hearsay, but he does not address the medical-diagnosis hearsay exception. *See Galindo v. United States*, 630 A.2d 202, 210 (D.C. 1993) ("Under the medical diagnosis exception to the hearsay rule, statements made by a patient for purposes of obtaining medical treatment are admissible for their truth . . . ."). We therefore decline to consider N.W.'s hearsay argument. *See CHH Capital Hotel Partners, LP v. District of Columbia*, 152 A.3d 591, 596 n.11 (D.C. 2017) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *McFarland v. George Washington Univ.*, 935 A.2d 337, 351 (D.C. 2007))). Nonetheless, contrary to A.C.'s argument, the trial court was not required to attach great weight to this hearsay testimony—the trial court

(continued…)

1113 ("Where the issue is a critical one, trial judges must explicate their reasoning in considerable detail."); *cf. Khawam*, 84 A.3d at 573 (reversing the trial court's denial of a motion to modify a custody award without a hearing where the court had failed to address "the serious allegations raised by [the] motion"). Accordingly, the trial court's findings were insufficient to allow meaningful review and a remand is required.[17]

## III.

Appellee N.W. filed a cross-appeal in which he raises several issues, many of which we addressed (at least implicitly) in the discussion above. We turn now to N.W.'s remaining claim that Ms. Lopez's testimony was barred by D.C. Code § 4-1301.52 (a), a statute which provides for the confidentiality of certain information and records in the custody of Safe Shores. N.W. relies primarily on

---

(…continued)

could properly have been skeptical that a few comments uttered during a therapy session by a five-year-old child whose first language was not English constituted a considered expression of the child's wishes on custody or visitation. See also *supra* note 14.

[17] N.W. suggests that a remand is unnecessary because "[t]he record in [the] case so plainly supports [the trial court's] ultimate decision to vacate the" temporary custody order. Yet because the evidence in this case was not so one-sided that we can "discern from the record only one permissible option," *K.H. v. R.H.*, 935 A.2d 328, 335 (D.C. 2007), we cannot simply affirm the trial court's order.

D.C. Code § 4-1301.52 (a)(4), which states that "[u]nder no circumstances shall mental impressions, conclusions, opinions, or theories contained in protected [Safe Shores] records be subject to disclosure."

A.C. does not dispute that Ms. Lopez's testimony contained mental impressions, conclusions, opinions, or theories. N.W.'s argument nonetheless fails because § 4-1301.52 (a)(4) only specifies that certain information is not "subject to" disclosure—that is, that certain information cannot be involuntarily compelled. D.C. Code § 4-1301.52 (a)(4); *see Black's Law Dictionary* 1651 (10th ed. 2014) (defining "subject" (adjective) as "[e]xposed, liable, or prone"); *id.* at 1651–52 (defining "subject" (verb) as "[t]o cause to undergo some action, agent, or operation" and "[t]o expose to the operation of some law or agency"). By its terms, § 4-1301.52 (a)(4) does not preclude the voluntary disclosure of protected information. And the relevant committee report reveals that in enacting this statute, the D.C. Council was primarily concerned about the possibility of Safe Shores being inundated with record requests and with protecting victims' confidentiality, not with barring voluntary disclosures of records and information. *See* Council of the District of Columbia, Report of the Committee on Human Services on Bill 15-389, at 38 (Dec. 6, 2004) ("[Safe Shores'] important mission to serve victims of child abuse depends largely on the willingness of its members to

discuss cases candidly and share information—and on the willingness of victims and witnesses to come forward. This mission could easily be undermined by constant requests for the production of documents."). N.W. does not dispute that any protected information disclosed by Ms. Lopez during her testimony was done so with the authorization of A.C., who had full legal custody of A.C.W.[18]

N.W. argues that it would be unfair for "an accused [to have protected information] used against him while he is effectively limited [by D.C. Code § 4-1301.52 (a)] from conducting full discovery of such information." But N.W. was provided with the relevant Safe Shores records, so the hypothesized unfair situation did not materialize.[19] N.W. does not meaningfully argue that his due process rights were violated, and on the record before us, we see no reason to conclude that N.W. lacked an adequate basis on which to cross-examine Ms. Lopez.[20]

---

[18] The question whether A.C. had the power to consent to disclosure of A.C.W.'s protected information so that the information could be used against N.W. is not squarely presented in N.W.'s brief and we do not address it.

[19] N.W. claims that he was only furnished redacted records, but he has not argued in any detail that he was deprived of crucial information. Moreover, A.C. offered the records in evidence in the trial court and represented that they were complete; N.W. did not contest this representation at that time.

[20] N.W. also argues that Ms. Lopez testified outside of her area of expertise

(continued…)

**IV.**

As explained, the trial court's failure to make findings sufficient to permit meaningful appellate review compels us to order a remand. Because the trial court's ruling was not in itself erroneous, we choose to remand the record rather than the case. *See Lihlakha v. United States*, 89 A.3d 479, 490 n.32 (D.C. 2014);

---

(…continued)

and that she testified about an ultimate issue of fact—the credibility of A.C.W.'s allegations of abuse. In the trial court, N.W. conceded that Ms. Lopez was qualified to testify as an expert in clinical mental health, and although he made occasional objections (many of which were sustained), he did not object (or asserted only a general relevance or form objection) to the purportedly objectionable testimony that he identifies on appeal. These errors are thus not preserved for appeal. *See Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 563 (D.C. 2001) (noting that a party has an obligation "to make an objection to evidence 'promptly and specifically,' at a time when it might be possible for the opposing party to meet its force or for the trial court to cure any omission or error" (quoting *In re T.H.B.*, 670 A.2d 895, 902 (D.C. 1996))). N.W. specifically complains about the trial court's summary of Ms. Lopez's testimony "that the child's visible discomfort after disclosing instances of abuse is a typical trauma response, and that it did not indicate to Ms. Lopez that the child might be lying." It was N.W. who elicited this testimony (on cross-examination) and he did not move to strike it. *See Gonzalez v. United States*, 697 A.2d 819, 826 (D.C. 1997) (holding that "highly prejudicial" testimony elicited by the appellant on cross-examination was invited error and thus not challengeable on appeal). We note, however, that this testimony was not admissible as positive evidence that A.C.W. was telling the truth in her statements to Ms. Lopez or that she had been sexually abused. This testimony should only be considered as rehabilitative evidence providing "an alternative explanation"—besides dishonesty—"for the child's . . . behavior." *Mindombe v. United States*, 795 A.2d 39, 46 (D.C. 2002) (quoting *State v. Chamberlain*, 628 A.2d 704, 707 (N.H. 1993)); *see also Oliver*, 711 A.2d at 73.

*Bell v. United States*, 676 A.2d 37, 41 (D.C. 1996). The trial court should supplement its findings of fact and set forth its reasoning in greater detail, in accordance with the principles set forth in this opinion.[21] Once the trial court has elaborated on its findings of fact and reasoning, it should return the record to this court for further consideration. Because in a record remand we retain jurisdiction over the case, the parties will not need to file a new notice of appeal. *Bell*, 676 A.2d at 41. It is our hope that proceeding in this way will expedite the conclusion of this matter, which has already lasted two years while the father's custodial status has remained unresolved.

Further, the stay pending appeal will be vacated. Judge Okun stayed Judge Rigsby's order vacating the temporary custody order after finding that A.C. had satisfied the four factors set forth in our case law: "that . . . she [wa]s likely to succeed on the merits, that irreparable injury w[ould] result if the stay [were] denied, that [the] opposing part[y] w[ould] not be harmed by a stay, and that the public interest favor[ed] the granting of a stay." *Salvattera v. Ramirez*, 105 A.3d 1003, 1005 (D.C. 2014) (quoting *Barry v. Washington Post Co.*, 529 A.2d 319,

---

[21] "[I]n a record remand the trial court, lacking jurisdiction, 'does not have the authority to amend the ruling that is on appeal,' [but] it would not amend the ruling merely by making findings[] as requested." *Lihlakha*, 89 A.3d at 490 n.32 (quoting *Bell*, 676 A.2d at 41) (citation and ellipsis omitted).

320–21 (D.C. 1987)). Judge Okun found that A.C. had shown "a likelihood of success on appeal, because Judge Rigsby's [o]rder contains insufficient factual findings on the issue of whether [N.W.] committed an intra-family offense against his five[-]year-old daughter." Judge Okun also found that A.C. would be irreparably harmed if visitation were allowed during the course of the appeal and if the allegations of sexual abuse were in fact true. Judge Okun found that "it would be contrary to the strong public interest in . . . protecting children from sex abuse to allow [N.W.] to have visitation with his daughter during the pendency of [A.C.'s] appeal, in light of the significant sexual abuse allegations . . . and the trial court's failure to make any findings on that critical issue." Finally, Judge Okun found that the harm to N.W.'s constitutionally protected parental rights resulting from the deprivation of custody and visitation pending this appeal was outweighed by the potential harm to A.C. These findings are not clearly erroneous or contrary to law, and Judge Okun did not abuse his discretion in staying the order vacating the temporary custody order. *See Akassy v. William Penn Apartments Ltd. P'ship*, 891 A.2d 291, 309 (D.C. 2006).

Nevertheless, in light of our ruling today and given that more than a year has passed since Judge Okun issued his stay, now is an appropriate time to revisit the stay. First, because we are remanding the record for further findings, the primary

motivations for the stay—(1) the likelihood of reversal due to the insufficient findings in Judge Rigsby's order and (2) the possibility that N.W. abused his daughter (a possibility that could not have been ruled out due to the insufficient findings)—now have less force and should be reevaluated. *See, e.g.*, *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003) ("When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay *sua sponte* or upon motion.").

Second, the effect of Judge Okun's stay has not been to preserve the status quo pending appeal, *see Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) ("[T]he maintenance of the status quo is an important consideration in granting a stay." (quoting *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978))), but rather to convert the temporary emergency custody order into a de facto permanent order. We cannot ignore the fact that no factfinder has ever found that N.W. harmed A.C.W. and that the factfinder who extensively considered the abuse allegations, Judge Rigsby, presumably determined that N.W. did not harm A.C.W., given that he vacated the temporary custody order and ruled that A.C. "ha[d] not met her burden." N.W. has thus been deprived of his custodial rights and visitation (even though supervised) for over two years on the basis of a vague ex parte allegation—a result at odds with the "fundamental liberty interest of natural

parents in the care, custody, and management of their child." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *see In re Ko.W.*, 774 A.2d 296, 306 (D.C. 2001) (holding that the trial court was not permitted to prohibit "visitation without conducting a factual inquiry, and without making a finding, as to whether the accusations against the father were true or false").

Therefore, although Judge Okun did not abuse his discretion when he issued it, the stay should now be vacated. We therefore exercise our power under the All Writs Act, 28 U.S.C. § 1651,[22] to do so. *See Public Utils. Comm'n v. Capital Transit Co.*, 214 F.2d 242, 245 (D.C. Cir. 1954) (recognizing the power of appellate courts under the All Writs Act to grant relief pending an appeal); *see also* Super. Ct. Dom. Rel. R. 62 (g) (stating that the trial court's authority to stay a judgment pending appeal "does not limit the power of an appellate court to stay a judgment or make any other order with respect to the judgment"); 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2908 (3d ed. 2017).

Although we order that the stay be vacated, nothing in this opinion limits the

---

[22] The All Writs Act provides that "all courts established by Act of Congress"—as this court was, *see Palmore v. United States*, 411 U.S. 389, 398 (1973); *District of Columbia v. Greene*, 806 A.2d 216, 219 (D.C. 2002)—"may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (a).

trial court's prerogative to issue a new stay order if it is warranted upon consideration of the relevant factors, in light of current circumstances.[23] If the trial court projects that it will be able to supplement its findings in Judge Rigsby's order vacating the temporary custody order and return the record to our court in an expedited manner, the trial court can take that into account in deciding whether it is appropriate to issue a new stay. New evidence of abuse would also clearly be relevant to the determination.

Finally, we note that in its order vacating the temporary custody order, the trial court denied a motion for a permanent custody award filed by the mother, A.C. As A.C. points out, the motion for a permanent custody award was not a subject of the four-day hearing on the motion to vacate, and the court's ruling on this matter was premature and should accordingly be vacated on remand. Should A.C. wish to pursue her motion for a permanent custody award, she may do so even while the present appeal concerning the vacatur of the temporary custody

---

[23] Even though we retain jurisdiction over the action in a record remand, the trial court still has the authority to issue a stay order. *See, e.g.*, *In re M.O.R.*, 851 A.2d 503, 508 n.3 (D.C. 2004) (stating that the filing of a notice of appeal does not "divest the trial court of all power to act upon a motion that would affect the appealed order" and that "the trial court is always free to consider and decide motions that are directed to changed circumstances and that do not directly challenge the appealed order").

order is pending. The two matters are distinct, and thus hearing and deciding the motion for a permanent custody award would not fall within the general "rule against trial court action affecting matters on appeal." *Stebbins v. Stebbins*, 673 A.2d 184, 190 (D.C. 1996); see also *supra* note 23. Any ruling on A.C.'s motion for a permanent custody award should of course be based on current circumstances.

## V.

For the foregoing reasons, we remand the record to the trial court. We also order that the trial court vacate the stay order currently in effect and vacate the ruling denying A.C.'s motion for a new permanent custody award.

*So ordered.*